MISSOURI PACIFIC RAILROAD COMPANY, a corporation, and United Transportation Union, an unincorporated association, Respondents,

v.

MISSOURI COMMISSION ON HUMAN RIGHTS, Appellant.

No. WD 31438.

Missouri Court of Appeals, Western District.

Oct. 1, 1980.

John Ashcroft, Atty. Gen., Leslie Ann Schneider, Asst. Atty. Gen., Jefferson City, for appellant.

Charles R. Judge of Dubail, Judge, Kilker, O'Leary & Smith, St. Louis, for respondent United Transp. Union.

Paul E. Littleton, St. Louis, for respondent Missouri Pac. R. Co.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a circuit court judgment in the form of a writ of prohibition, declaring appellant to be without jurisdiction to conduct hearings on alleged employment discrimination practices. The judgment is affirmed.

Appellant, the Missouri Commission on Human Rights, is a state agency deriving its origin and authority from Chapter 296, RSMo 1978. Respondents are Missouri Pacific Railroad Company, the employer of complainants and the United Transportation Union, successor union to the Brotherhood of Railroad Trainmen.

Appellant presents two points of error. It contends (1) the trial court erred in making its preliminary writ permanent because appellant possessed jurisdiction as the re-

sult of continual discrimination and (2) the trial court erred in making its writ permanent because respondents had an adequate remedy at law by way of petition for review pursuant to Chapter 536, RSMo 1978.

Judgments in the form of writs are properly reviewable by direct appeal, see *State ex rel. River Cement Co. v. Pepple*, 585 S.W.2d 122 (Mo.App. 1979). The record in this case is limited to the pleadings, other documents in the form of affidavits and a stipulation of facts.

This case originated with the filing of four individual complaints of employment discrimination, with appellant, against respondent railway. All four complainants had been train porters for respondent railway. Their jobs were abolished between December, 1964 and May, 1965 as a direct result of the elimination of private railway passenger service. This elimination was the result of economic loss resulting from competitive modes of travel by buslines, airlines and private motor vehicles.

The four complaints were filed with the following lapses in time following the date of job abolishment: Complaint No. (1) 202 days, Complaint No. (2)–394 days, Complaint No. (3)–406 days and Complaint No. (4)–407 days. All four complaints were filed in 1966. Respondents filed their motion to dismiss on the premise that the complaints had not been filed within the time prescribed by statute (90 days), see § 296.040(7), RSMo 1969.[1] On October 12, 1978, appellant overruled respondents' motion to dismiss.

Respondents sought and secured a writ of prohibition, enjoining appellant from hearing the complaints upon failure to comply with § 296.040(7).

The stipulation of facts reveals the following:

"1. Plaintiff Missouri Railroad Company is an employer within the meaning of Section 296.010.3, RSMo 1969.

2. Plaintiff United Transportation Union is a labor organization within the meaning of Section 296.010.4, RSMo 1969.

3. Missouri Commission on Human Rights is a state administrative agency exercising quasi–judicial powers for the purpose of eliminating and preventing discrimination in employment because of race, creed, color, religion, national origin, sex or ancestry with the authority and the responsibility for administering and enforcing the provisions of Chapter 296, RSMo 1969.

4. The pertinent facts as to each individual complainant are as follows:

a. Archie Blackwell, a black male, was first employed as a train porter in June, 1936; his position as a train porter was abolished on May 15, 1965; his complaint with E.E.O.C. was referred to defendant on December 3, 1965; and his amended complaint with the Commission was filed on February 3, 1966.

b. J. E. Scott, a black male, was first employed by plaintiff Missouri Pacific as a train porter in March of 1944; his position as train porter was abolished on January 4, 1965; his complaint was filed with the defendant on February 2, 1966.

c. Charles McClennon, a black male, was first employed by plaintiff Missouri Pacific as a train porter in September, 1942; his position as a train porter was abolished on January 4, 1965; and his complaint was filed with defendant on February 14, 1966.

d. James A. Walker, a black male, was first employed as a train porter in August, 1946; his position as a train porter was abolished on January 4, 1965; his complaint was filed with defendant on February 15, 1966.

5. The following pertinent facts apply to each individual complainant after the abolition of their respective positions as train porters with plaintiff Missouri Pacific:

a. Archie Blackwell, after the abolition of his position as train porter, applied for the position of switchman; between 1966 and 1970, he worked on the extra board as a brakeman for plaintiff Missouri Pacific. In working as a brakeman, Archie Blackwell was not permitted to carry over his train porter's seniority.

---

1. 1978 amendment extended the time to 180 days.

b. J. E. Scott, after the abolition of his position as train porter, worked as a brakeman on the extra board; between November, 1965 and October 1966, he worked as a stowman; in August of 1966, he applied for a locomotive fireman's position and acquired a seniority date as a locomotive fireman of October 8, 1966. In December of 1971, J. E. Scott acquired seniority as a locomotive engineer and worked as a locomotive engineer until his retirement in September, 1973. In Scott's employment as a brakeman, fireman and engineer, he was not permitted to carry over his previously accumulated train porter's seniority.

c. Charles McClennon, after the abolition of his position as a train porter, applied for the position of switchman in April, 1965 and acquired a seniority date as a switchman in May of 1965, and served in that position until his retirement on September 3, 1969. In McClennon's employment as a switchman, he was not permitted to carry over his previously accumulated train porter's seniority.

d. James A. Walker, after the abolition of his position as a train porter, applied for the position of switchman in February, 1965, and was employed as a switchman on April 28, 1965, a position he has continued to occupy to date. In Walker's employment as a switchman, he was not permitted to carry over his previously accumulated train porter's seniority.

6. On September 15, 1977, the plaintiff Missouri Pacific was served a copy of an amended complaint, dated September 13, 1977, styled 'In the Matter of Archie R. Blackwell, Charles McClennon, J. E. Scott, and James A. Walker, Complainants v. Missouri Pacific Railroad Company, Respondent', Clause No. 65 FEP 56, 2/66–322, 286, and 327, filed with the Missouri Commission on Human Rights by Robert R. Tyler, Executive Director of the Commission.

7. On September 30, 1977, the plaintiff United Transportation Union was served with an amended complaint, dated September 28, 1977, in an administrative enforcement action, styled 'In The Matter of Archie R. Blackwell and Charles McClennon, Complainants, v. Brotherhood of Railroad Trainmen, United Transportation Union, Respondent', Cause No. E–2/66–294 and 323, filed with the Missouri Commission on Human Rights by Robert R. Tyler, Executive Director of the Commission.

8. On April 27 and 28, 1978 plaintiffs, as respondents in the administrative proceedings referred to in paragraphs 7 and 8 above, filed their motions to dismiss the amended complaints on the grounds that the Commission lacked jurisdiction over the subject matter of the proceeding because: (1) the acts complained of occurred prior to October 13, 1961, the effective date of the Missouri law prohibiting discrimination in employment, and, therefore, those acts could not serve as the basis for any liability, and (2) with respect to the alleged discriminatory events occurring after October 13, 1961, none of the complainants filed a complaint with the Commission within the required ninety (90) days as set forth in Section 296.040, RSMo 1969. Said Motions were overruled on October 12, 1978."

An old railway practice spanning many years and union contracts attending to a comparable period of time stated that when any railway employee changed job classification, he or she was not permitted to transfer employment seniority status to the successor job classification. All four complainants herein had several years job experience with respondent railway and were participating members in the train porters union. Following the abolishment of their jobs, they went on the "extra board" and as time progressed, were reemployed into other permanent positions with respondent railway. At present, one complainant is actively employed with respondent railway and the other three are retired.

The parties agree that none of the complaints were filed within 90 days of the job abolishment. Appellant, however, argues a continual discrimination, thus the filing of the complaints was timely to conform to the requirements of the statute.

Upon its first alleged error, appellant argues there were two acts of employment discrimination. The first such act was that of the job abolishment. The second was the fact that since the complainants were re-hired on a permanent basis but were denied the transfer of seniority rights acquired while they were train porters, such denial resulted from the job classification and seniority system, which is discriminatory, and the denial of seniority rights continuing in effect, resulting in an "additional series of acts of discrimination" until the complaints were filed. Appellant then concludes that from such continual discrimination, the complaints were timely filed and appellant thus had jurisdiction to conduct hearings on the complaints.

The only issues before this court are whether appellant had jurisdiction as alleged (and thus the writ of prohibition should be dissolved) and whether respondents had an adequate remedy at law (and by virtue thereof, an action for writ of prohibition would not lie).

In their initial complaints, all four complainants, each a black male, alleged racial discrimination as to job classification and employment practices. In summary, their complaints alleged that white men had been placed in their positions (i. e., as railroad brakemen), there was no severance pay granted upon job abolishment, the union assisted the railroad in the discrimination "because their men are working on our jobs and they have had promotions . . .", there was a refusal to make them extra railroad brakemen because the superintendent favored college students for such positions and a general complaint that the Brotherhood of Sleeping Car Porters would not intervene when the job abolishment occurred.

Upon the receipt of the above complaints, appellant consolidated them and served respondents a copy of an amended complaint, which in general terms alleged respondents had pursued a historical policy pattern and practice of discrimination by maintaining a segregated union and job classification occupied predominantly by one race with few-

er benefits and less pay. The amended complaint alleged respondent railroad continued to recognize the unlawful job classification and the union allegedly denied the complainants and all blacks admission to the union with the net result of denying blacks the position of brakemen.

In resolving appellant's first point of error, it is only necessary to determine if there was a "continual discrimination", for if there was not, the record clearly shows none of the complaints was filed within 90 days of the job abolishment. Appellant argues a continual discrimination upon the failure of one complainant to receive severance pay, the assumed description of the job termination as a "lay off" and the fact that complainants were subsequently assigned to permanent employment positions.

Appellant, by way of its amended complaint and argument before this court, further attacks the respondent railway job classification system and the union's admission policy, both of which have been in existence since complainants' initial employment, spanning several years preceding the job abolishment. Appellant contends that such job classification and union admission policy, two allegedly similar job positions, resulted from this discriminatory practice. These two jobs positions were train porters and brakemen.

Appellant then argues that by the abolishment of only one job position, that of train porter, a further act of discrimination occurred. Appellant then contends that when the accrued seniority rights as train porters were not transferred on complainants' behalf to their successor job positions, continued acts of discrimination resulted therefrom.

The jobs of train porters and brakemen are exclusive job positions. Train porters were assigned mainly to assist conductors and passengers on passenger trains and only on occasion, were called upon to perform some of the tasks of brakemen or to assist switchmen.

Due to the elimination of private passenger trains, the job of train porter became obsolete.

■ In order for continual employment discrimination to be established, it must be found that a continual employment relationship existed, and if the employment relationship be severed by discharge or resignation, any alleged employment discrimination ceases to exist, see *Rudolf v. Wagner Electric Corp.*, 586 F.2d 90 (8th Cir. 1978) and *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228 (8th Cir. 1975). It has further been held that where a timely filing does not occur after a discharge, no jurisdiction is obtained by the agency with which the complaint may be filed, see *St. Louis–San Francisco Railway Company v. Mayor's Commission on Human Rights and Community Relations*, 572 S.W.2d 492 (Mo.App. 1978).

■ Analysis of the facts and circumstances of the instant case give rise to but one conclusion. The jobs of the four complainants were terminated and abolished because of the failure of private railway passenger service. The need for such employment services came to its end. The employment of the four complainants was thus terminated and employment severance resulted. The fact that all four complainants went on the "extra board" and were subsequently reemployed in other permanent positions cannot be defined as a "layoff" as that term is commonly used, nor can the work, through the "extra board" and subsequent reemployment, be construed as continual employment as argued by appellant. The employment of all four complainants was terminated with the abolishment of their positions as train porters and employment was severed. Any alleged employment discrimination was thus concluded as a result thereof, see *Rudolf v. Wagner Electric Corp.*, and *Olson v. Rembrandt Printing Co., supra.*

It should also be noted that regardless of the motive which gave rise to the policies of job classification and union admission, the two job positions of train porter and brakeman are exclusively railway job positions. In the instant case, the abolition of the train porter's position was mandated by economic conditions and a good faith effort to reduce railway personnel to more efficient limits. That such employment reduction action has been held not to be "continuous employment" see *Nunn v. Missouri Pacific Railroad Company*, 248 F.Supp. 304 (E.D.Mo.1965).

"The continuing violation theory was created to add some flexibility to an otherwise rigid jurisdictional filing requirement that might often result in the denial of Title VII remedies to employees who have suffered employment discrimination." *Ridgeway v. International Brotherhood of Electrical Workers*, 466 F.Supp. 595, 599 (N.D.Ill. 1979). See also *In re Consolidated Pretrial Proceedings in the Airlines Cases, Appeal of American Airlines, and Trans World Airlines, Inc.*, 582 F.2d 1142, 1148 (7th Cir. 1978).

The continuing violations theory has been limited by later decision, see *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). This decision involved an airline employee who was required to resign because her marriage violated company policy prohibiting married flight attendants. Evans resigned in 1968. Between 1968 and 1972, this prohibition was determined to be discriminatory. In 1972, Evans was reinstated and one year later, sued her employer for reinstatement of prior seniority rights. The court found Evans' claim to be barred because it had not been filed within the statutory time required following her initial separation from her employment. The court, in so holding, declared at 558, 97 S.Ct. at 1889.

"A discriminatory act which is not made the basis for a timely charge is . . . merely an unfortunate event in history which has no legal consequences.

Respondent emphasizes the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." (emphasis in the original).

For other decisions finding untimely filings where alleged continued violations were based on the after–effects of an earlier illegal transfer or seniority system rather than an alleged current discriminatory practice of seniority system, see *Dobbs v. City of Atlanta, Ga.*, 606 F.2d 557 (5th Cir. 1979); *Trabucco v. Delta Airlines*, 590 F.2d 315 (6th Cir. 1979); *Furr v. Trans World Airlines, Inc.*, 461 F.Supp. 58 (S.D.Ohio 1978) and *Lockhart v. Firestone Tire & Rubber Co.*, 454 F.Supp. 191 (E.D.Va.1978).

Appellant herein predicates its argument upon past, not current, discriminatory practices and since *United Air Lines, Inc. v. Evans, supra,* continual violations have been found only where existing employment practices exhibit a pattern of employment discrimination, see *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757 (9th Cir. 1980); *Cedeck v. Hamiltonian Federal Savings & Loan Association*, 551 F.2d 1136 (8th Cir. 1977) and *Caldwell v. Seaboard Coastline Railroad*, 435 F.Supp. 310 (W.D.N.C.1977).

Appellant admits that determination of this issue rests upon this court's interpretation of our own statute and not any requirement that our courts follow the interpretation given to the Civil Rights Act of 1964, 42 U.S.C.A. § 1981 or Title VII, by the federal courts. The foregoing federal decisions, however, do provide an analogous means of determining under the prescribed facts and circumstances of this case whether there was a "continual discrimination". Under the facts and circumstances of this case, no such continual discrimination is found to exist.

One further point needs to be addressed before final disposition of appellant's first point can be reached. Appellant argues that the 90–day filing requirement prescribed by the statute is a statute of limitation under the usual application or use of that term. § 296.040(7) (1969) reads:

"7. The commission shall establish rules of practice to govern, expedite, and effectuate the foregoing procedure and its own actions thereunder. Any complaint filed pursuant to this section must be so filed within ninety days after the alleged act of discrimination."

Appellant contends that such provision, being a statute of limitation in the ordinary sense of the term, can be "tolled" upon application of a continuing violation.

What § 296.040(7) provides is a limitation contained in a statute which both creates a liability and imposes a remedy. The wording of that section (as regards limitation) goes to limiting the liability itself and not the remedy alone, see *St. Louis–San Francisco Railway Co. v. Mayor's Commission on Human Rights and Community Relations, supra,* and *Guy v. Robbins & Myers, Inc.*, 525 F.2d 124 (6th Cir. 1975) for similar analogy.

In any case, the filing of the complaints herein is found to have been untimely. In the first instance, for the reasons set forth above, no continual discrimination is found within the facts and circumstances of the instant case because of the severance of employment relations between the complainants and respondent railway, *Rudolf v. Wagner Electric Corp. and Olson v. Rembrandt Printing Company, supra.* Further, no continual discrimination is found upon the facts and circumstances within the instant case because the job abolishment is herein found to be the necessary result of economic necessity and to bring the respondent railway personnel within more efficient limits, see *Nunn v. Missouri Pacific Railroad Co., supra.* Further, under the facts and circumstances of the instant case, there is no challenge to existing practices, and hence the challenge is made to earlier alleged practices and the alleged after effects thereof. Therefore, failure to comply with the 90–day filing requirement bars recovery as untimely, see *United Air Lines, Inc. v. Evans; Dobbs v. City of Atlanta, Ga.; Trabucco v. Delta Airlines* and *Lockhart v. Firestone Tire and Rubber Co., supra.*

Further, § 296.040(7), having been found to be a limitation contained within a statute, requires the filing of any complaint within 90 days of the alleged discriminatory act. It having been found under the facts

and circumstances of the instant case that no continual discrimination occurred, appellant could have only acquired jurisdiction in this matter if the four complaints had been filed within 90 days of the job abolishment. The facts stipulated to upon the record eliminate any further contention in that regard as none of the complaints were filed as mandated by the statute within the 90-day period.

For the foregoing reasons, point one is ruled against appellant.

As its second point, appellant alleges the trial court erred in issuing its writ and in making that writ permanent because respondents had an adequate remedy at law pursuant to Chapter 536, RSMo 1978.

Appellant argues that although appeal by way of petition for review would be inconvenient and unsatisfactory, such is not the basis for relief by extraordinary writ. On its face, that argument is thoroughly sound.

■ In order for relief by writ to lie, two elements must exist simultaneously. The first and most basic is the absence or lack of jurisdiction in the tribunal before which a matter is pending. The second element is the lack of an adequate remedy at law by way of appeal.

As concluded above, it is found that under the facts and circumstances of the instant case, appellant lacked jurisdiction to conduct the hearings on the four complaints. The only remaining question is whether respondents had an adequate remedy by law by way of appeal, which if so, provides a basis for dissolving the writ of prohibition.

A writ of prohibition raises the question of whether a court is possessed of jurisdiction to act as it did or purports to act as it intends, see *State ex rel. Bonzon v. Weinstein*, 514 S.W.2d 357 (Mo.App.1974). Since appellant is found to be without jurisdiction, it is proper for respondents to seek a writ of prohibition, see *State ex rel. City of Maplewood v. Crandall*, 569 S.W.2d 338 (Mo. App.1978).

■ The application of relief by writ of prohibition is not limited to the courts, but finds application to the acts of other public bodies, including boards, agencies and commissions which exercise quasi-judicial functions, see *St. Louis–San Francisco Railway Co. v. Mayor's Commission on Human Rights and Community Relations, supra,* and *State ex rel. Atkins v. Missouri State Board of Accountancy,* 351 S.W.2d 483 (Mo. App.1961). Such application includes appellant herein.

■ Appellant, by argument, suggests that since it is vested with general jurisdiction of the subject matter under § 296.030 et seq., prohibition can only lie where a jurisdictional defect is clearly evident. What appellant overlooks is that relief sought by a writ of prohibition is preventative, not corrective, see *State ex rel. Cervantes v. Bloom,* 485 S.W.2d 446 (Mo.App. 1972) and *Knisley v. State,* 448 S.W.2d 890 (Mo.1970).

What respondents seek by way of writ of prohibition is determination of appellant's jurisdiction prior to the commencement of any formal proceedings. That jurisdiction is challenged and has been found herein to be lacking upon the untimely filing of the four complaints. If respondents were limited to a remedy by way of appeal, the exact same question of jurisdiction would serve the basis of that appeal before this court following the formal proceedings.

This very question has been resolved by the court en banc, Southern District, in *St. Louis–San Francisco Railway Co. v. Mayor's Commission on Human Rights and Community Relations, supra,* wherein upon citing *Dahlberg v. Fisse,* 328 Mo. 213, 40 S.W.2d 606 (1931), the court declared:

"An appeal would not prevent the expense, vexation and annoyance of plaintiff's compliance with the subpoenas; the question on appeal would be merely whether or not the defendant was acting without authority in issuing the subpoenas; and appeal would not be an adequate remedy." 572 S.W.2d at 494

The mere availability of appeal has not been construed to constitute an "adequate remedy" see *State ex rel. Sisters of St.*

*Mary v. Campbell*, 511 S.W.2d 141 (Mo.App. 1974).

This court concludes that respondents were without adequate remedy at law by way of appeal as prescribed by *St. Louis–San Francisco Railway Co. v. Mayor's Commission on Human Rights and Community Relations; Dahlberg v. Fisse; State ex rel. Cervantes v. Bloom* and *Knisley v. State, supra,* and that relief sought by writ of prohibition was a proper remedy.

For the foregoing reasons, point two is ruled against appellant.

It is determined that appellant was without jurisdiction to conduct formal hearings upon the four complaints because said complaints were untimely filed. It is further determined that relief by way of writ of prohibition was a proper means of seeking the relief sought. For the foregoing reasons, the judgment of the circuit court is in all respects affirmed.

All concur.