_____

No. 95-1245
_____

George L. Gipson,                        *
                                         *
        Plaintiff - Appellant,           *
                                         *   Appeal from the United States
        v.                               *   District Court for the
                                         *   Eastern District of Missouri.
KAS Snacktime Company,                   *
                                         *
        Defendant - Appellee.            *

_____

            Submitted:  November 15, 1995

                Filed:  May 7, 1996
_____

Before McMILLIAN, FLOYD R. GIBSON, and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.


        George L. Gipson is an African-American sales manager for KAS
Snacktime Company ("KAS").  He commenced this race discrimination action
against KAS, alleging violations of the Missouri Human Rights Act ("MHRA"),
Mo. Rev. Stat. §§ 213.010 et seq., and Title VII of the Civil Rights Act
of 1964, 42 U.S.C. §§ 2000e et seq.  The district court dismissed Gipson's
MHRA claims as time-barred or not administratively exhausted.  The court
ruled in favor of KAS following a bench trial of the Title VII claims.
Gipson appeals.  We conclude that Gipson preserved an MHRA hostile work
environment claim that is not time-barred.  Accordingly, we reverse and
remand.


                            **I. Background.**


        In 1986, KAS promoted Gipson to Regional Sales Manager for the St.
Louis region, a mid-level management position.  In July 1987, KAS hired
Rick Brank as Gipson's immediate supervisor.  The next

month, Borden, Inc., acquired KAS. Gipson's employment fortunes declined, culminating in his demotion to District Sales Manager in March 1989. Gipson blames this on an atrocious working relationship with Brank caused by Brank's racial bigotry. KAS denies race discrimination in its workplace.

In July 1989, following his demotion, Gipson filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC"). On the Charge form, Gipson checked the box alleging race discrimination and stated in the "particulars" section of the form:

> I was continually harassed by my immediate supervisor in that I was reprimanded, rated unfairly, placed on probation and performance programs, subjected to different terms and conditions of employment from a White Regional Manager, and finally demoted.

Gipson attached a three-page supporting affidavit detailing unfair treatment by supervisor Brank and the failure of various KAS vice presidents to act on Gipson's complaints against Brank.

Brank left KAS in February 1991. Gipson received right-to-sue letters from the MCHR and the EEOC in mid-1991. He commenced this action on July 27, 1991, asserting race discrimination and retaliation claims under the MHRA and Title VII. Gipson alleged a continuing course of racially discriminatory conduct, including:

-- false performance evaluations;

-- denied raises;

-- an unwarranted performance improvement program;

-- unwarranted threats of termination;

-- improper demotion to District Sales Manager;

-- reassignment to a predominately white rural area;

-2-

-- threats of physical injury;

-- racial name-calling;

-- denied promotions;

-- discriminatory refusal to allow Gipson to hire employees, particularly black employees; and

-- failure by KAS to stop this unlawful conduct.

After substantial discovery, KAS moved for summary judgment on the MHRA claims, arguing that most are barred by the MHRA statute of limitations, and the rest were not included in Gipson's administrative Charge.  In response, Gipson argued that all his claims are timely under the "continuing violation" doctrine, and that his allegations of post-Charge violations must be deemed exhausted because they are reasonably related to the allegations in his Charge.  Gipson attached to his summary judgment memorandum an interrogatory answer containing a six-page chronology of KAS's alleged discriminatory actions from July 14, 1987, to January 8, 1991, just before Brank departed.

The district court dismissed the MHRA claims.  The court concluded (i) that the challenged pre-Charge conduct, though continuing in nature, is time-barred because it all occurred more than two years before Gipson sued, and (ii) that Gipson's post-Charge allegations are not reasonably related to the violations alleged in his Charge.  Gipson v. KAS Snacktime Co., 874 F. Supp. 1548 (E.D. Mo. 1993).  After a bench trial of Gipson's Title VII claims,[1] the district court ruled in favor of KAS in a seventy-five page Memorandum Opinion, finding that Brank was a demanding, abrasive supervisor but that Brank's acrimonious relationship with

---

[1] trial of his Title VII claims because they arose prior to the enactment of 42 U.S.C. § 1981a(c).  See Landgraf v. USI Film Prods., 114 S. Ct. 1483 (1994).

Gipson "was not due to racial bias."  Gipson v. KAS Snacktime Co., 874 F.
Supp. 1556 (E.D. Mo. 1994).  This appeal followed.[2]

## II. MHRA Claims.

The MHRA requires that claimants exhaust their administrative
remedies by filing a charge of discrimination within 180 days after "the
alleged act of discrimination."  See Mo. Rev. Stat. § 213.075(1);
Southwestern Bell Tel. Co. v. Missouri Comm'n on Human Rights, 863 S.W.2d
682, 684 (Mo. App. 1993).  If the agency takes no action on the charge, the
claimant may sue within ninety days of the agency's right-to-sue letter but
"no later than two years after the alleged cause occurred."  Mo. Rev. Stat.
§ 213.111(1).  Failure to meet these deadlines bars the claim.  See Hill
v. John Chezik Imports, 797 S.W.2d 528, 529 (Mo. App. 1990); Missouri Pac.
R.R. Co. v. Missouri Comm'n on Human Rights, 606 S.W.2d 496, 502 (Mo. App.
1980).

In cases construing the analogous requirements of Title VII, federal
courts have concluded that a discrete, adverse employment action, such as
a discharge, layoff, or failure to promote, "constitutes a completed act
at the time it occurred."  Boge v. Ringland-Johnson-Crowley Co., 976 F.2d
448, 451 (8th Cir. 1992).  The time for filing an administrative charge or
commencing a lawsuit runs from the date of such a discriminatory act, even
if its effects on the injured employee are long-lasting.  See Ashley v.
Boyle's Famous Corned Beef Co., 66 F.3d 164, 167 (8th Cir. 1995) (en banc).
"Mere continuity of employment, without more, is insufficient to prolong
the life of a cause of action for employment discrimination."  Delaware
State College v. Ricks, 449

---

[2]Gipson does not appeal the dismissal of his retaliation
claims because they were not included in the Charge.  See Williams
v. Little Rock Mun. Water Works, 21 F.3d 218, 222-23 (8th Cir.
1994).

U.S. 250, 257 (1980).  Thus, if such an act is not timely challenged, the right to relief expires:

> A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed.  It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977), quoted favorably in Missouri Pac. R.R., 606 S.W.2d at 501.

Applying this principle, we agree with the district court that Gipson's challenges to discrete, adverse employment actions are time-barred under the MHRA.  His claim for denied raises is barred because the denials occurred more than 180 days before he filed his Charge.  The claim for the alleged discriminatory demotion and assignment to a rural sales territory is barred because these actions occurred in March 1989, more than two years before he filed this lawsuit.  The claim for denied promotions was properly dismissed because Gipson's summary judgment submission provided no factual support for this claim.

On the other hand, Gipson also pleaded a hostile work environment claim, alleging that he was the victim of continuing racial harassment by Brank.  To be properly exhausted, that claim must be separately raised in the administrative charge, because it is not reasonably related to a claim of a discrete act of discrimination, such as demotion.  See Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994).  Here, Gipson's Charge and supporting affidavit -- which we must read liberally, Williams, 21 F.3d at 223 -- clearly alleged a continuing pattern of workplace harassment by Brank sufficient to state a claim for hostile work environment under the standards set forth in Harris v. Forklift Sys., Inc., 114 S. Ct. 367, 370-71 (1993).

A hostile work environment is an ongoing nightmare for the employee victim, in legal parlance, a "continuing violation." For this type of violation, the statute of limitations runs from "the last occurrence of discrimination." Hukkanen v. International Union of Operating Eng'rs Local 101, 3 F.3d 281, 285 (8th Cir. 1993). "[T]he critical question is whether any present *violation* exists." Satz v. ITT Fin. Corp., 619 F.2d 738, 744 (8th Cir. 1980), quoting UAL v. Evans, 431 U.S. at 558 (emphasis in original). In his Charge of Discrimination, Gipson alleged that he had been "continually harassed by my immediate supervisor." Because this allegation is sufficient to plead a hostile work environment violation on the date of his Charge, July 31, 1989, that claim was not time-barred when he commenced this action on July 27, 1991, less than two years later. In addition, Gipson's complaint and summary judgment response alleged that KAS's racial harassment continued until Brank left the company in February 1991. These post-Charge allegations are reasonably related to the racial harassment portion of the Charge and therefore must be deemed exhausted. See Anderson v. Block, 807 F.2d 145, 147-48 (8th Cir. 1986); Gardner v. Morris, 752 F.2d 1271, 1279 (8th Cir. 1985). Thus, the district court erred in dismissing Gipson's hostile work environment claim under the MHRA.

Gipson further argues that, if he proves a pattern of racial harassment constituting a hostile work environment, he may recover damages for the entire period that this violation occurred, including any portion that occurred more than 180 days before he filed his Charge of Discrimination, or more than two years before he filed this lawsuit. We disagree. This argument was rejected in our recent en banc decision in Ashley, 66 F.3d at 167-68:

> When an employer is accused of an ongoing practice that began prior to the statute of limitations period, the claim may nonetheless be timely under the "continuing violation" doctrine. The employee may challenge ongoing discriminatory acts even if similar illegal acts could

have been challenged earlier and are thus time-barred. . . . <u>Relief back to the beginning of the limitations period strikes a reasonable balance between permitting redress of an ongoing wrong and imposing liability for conduct long past.</u>

(Emphasis added; citations omitted); <u>accord</u> <u>Knight v. Columbus</u>, 19 F.3d 579, 581 (11th Cir. 1994) ("Where a continuing violation is found, the plaintiffs can recover for any violations for which the statute of limitations has not expired").[3]  We conclude that the Missouri Supreme Court would apply this principle to continuing violation claims under the MHRA.  <u>See</u> <u>Davis v. Laclede Gas Co.</u>, 603 S.W.2d 554 (Mo. banc 1980).  Thus, if Gipson proves his hostile work environment claim on remand, he may recover damages incurred after July 27, 1989.

### III. The Jury Trial Issue.

Gipson argues that, on remand, he has a right to a jury trial of his MHRA hostile work environment claim, an issue we have not previously addressed.  <u>See</u> <u>Finley v. Empiregas, Inc.</u>, 975 F.2d 467, 471 (8th Cir. 1992).  The Missouri courts do not allow jury trials of MHRA claims.  In <u>State ex rel. Tolbert v. Sweeney</u>, 828 S.W.2d 929, 930-35 (Mo. App. 1992), the court reasoned that the Missouri Legislature eliminated an express jury trial provision in the prior statute, and the Governor vetoed a bill adding such a provision to the MHRA, thereby demonstrating a legislative intent to deny jury trials; that Article I, § 22(a), of the Missouri Constitution, which protects the right to jury trial "as heretofore enjoyed," does not apply to statutory causes of action that are equitable in

---

[3]Gipson's reliance on <u>Havens Realty Corp. v. Coleman</u>, 455 U.S. 363 (1982), is misplaced.  <u>Havens</u> concerned standing to sue, not the extent of damage liability.  Consistent with the rule we adopted in <u>Ashley</u>, the Supreme Court in <u>Havens</u> upheld plaintiff Coleman's standing to challenge a continuing discriminatory practice, but dismissed her damage claims for acts prior to the applicable 180-day statute of limitations.  455 U.S. at 380-82.

nature or involve administrative proceedings; and that the "main thrust of relief [under the MHRA] is equitable in nature," with damages allowed only "to allow a party full redress of any wrong." Accord Wentz v. Industrial Automation, 847 S.W.2d 877, 880 (Mo. App. 1992).

However, the right to a jury trial in federal court is a question of federal law, even when the federal court is enforcing state-created rights and obligations, see Simler v. Conner, 372 U.S. 221, 222 (1963) (per curiam), indeed, even when a state statute or state constitution would preclude a jury trial in state court, see Byrd v. Blue Ridge Rural Elec. Coop., Inc., 356 U.S. 525, 538-39 (1958); Herron v. Southern Pac. Co., 283 U.S. 91 (1931). Because the Seventh Amendment preserves the right to jury trial in federal court "[i]n Suits at common law," federal law focuses upon whether a claim is legal or equitable in nature. Damages are, of course, the "traditional form of relief offered in the courts of law." Curtis v. Loether, 415 U.S. 189, 196 (1974). Thus, when a federal plaintiff seeks damages, either party may demand a jury trial, even if those damages are merely "incidental" to equitable relief. Dairy Queen, Inc. v. Wood, 369 U.S. 469, 470 (1962).

The Seventh Amendment right to jury trial extends to statutory causes of action, so long as the statute allows, and the plaintiff seeks, at least in part a legal remedy. Curtis, 415 U.S. at 194. The MHRA authorizes the recovery of "actual and punitive damages," in addition to equitable remedies such as backpay. Mo. Rev. Stat. § 213.111(2). Therefore, we agree with the Eastern District of Missouri decisions holding that a plaintiff seeking damages under the MHRA is entitled to a jury trial in federal court. See Sullivan v. Curators of the Univ. of Mo., 808 F. Supp. 1420, 1424 (E.D. Mo. 1992); Stewart v. Yellow Frieght Sys., Inc., 702 F. Supp. 230, 231 (E.D. Mo. 1988).

When the district court has erroneously dismissed a claim to which the right to jury trial applies and has also tried another claim raising the same or related issues to the court, the plaintiff's Seventh Amendment right requires that the court's factual findings from the bench trial not collaterally estop plaintiff in pursuing his legal claims. See Lytle v. Household Mfg., Inc., 494 U.S. 545, 552-53 (1990); see also Wiehoff v. GTE Directories Corp., 61 F.3d 588, 595-96 (8th Cir. 1995). Gipson argues that we must therefore vacate the district court's judgment for KAS on his Title VII claims, as the Court did in Lytle, 494 U.S. at 555-56 & n.4. However, Lytle involved related federal claims for legal and equitable relief under 42 U.S.C. § 1981 and Title VII. Here, Gipson has had his day in court on all federal claims, and there is a strong federal interest in not needlessly relitigating those claims. Gipson's right to jury trial on the MHRA claim will be fully protected by denying KAS any collateral estoppel benefit from the Title VII trial, precisely the way we handled a similar situation in Perkins v. Spivey, 911 F.2d 22, 32, 37 (8th Cir. 1990), cert. denied, 499 U.S. 920 (1991).

For the foregoing reasons, the judgment of the district court dismissing Gipson's hostile work environment claim under the MHRA is reversed and the case is remanded for further proceedings on that claim consistent with this opinion. In all other respects, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-