995 F.Supp. 1001 (1998)
Thelma HALL, Plaintiff,
v.
MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION
and
Ron Hopkins, Defendants.
No. 4:96 CV 01042 SNL.
United States District Court, E.D. Missouri, Eastern Division.
March 6, 1998.
*1002 Lois Spritzer, Van Amberg and Chackes, St. Louis, MO, for Plaintiff.
Paula R. Lambrecht, Melinda K. Grace-Beasley, Highway & Transp. Com'n, State of Mo., Jefferson City, MO, for Defendants.

*1003 MEMORANDUM AND ORDER

LIMBAUGH, District Judge.
This matter is before the Court on the summary judgment motions filed by defendant Missouri Highway Transportation Commission ("MHTC") and defendant Ron Hopkins ("Hopkins") (collectively "Defendants") on December 1, 1997. The underlying employment discrimination action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and 42 U.S.C. § 1983 ("§ 1983"). Plaintiff argues that she was disparately treated in the terms and conditions of her employment, and ultimately discharged, because of her age and gender. Plaintiff also alleges that Hopkins retaliated against her for complaining of discrimination against older women in her district. Defendants deny these allegations.

Background
MHTC is a subordinate body of the executive branch of the government of the State of Missouri. It consists of six appointed members and has the authority to construct, reconstruct, and maintain all roadways and bridges in the state highway system.
The Missouri Department of Transportation ("MoDOT") is an organization operating under the exclusive control of MHTC. To aid in its operations, MoDOT has divided the state into ten geographical areas designated as districts, each containing an office responsible for administration of work within that area. Plaintiff was employed in district # 6, consisting of the City of St. Louis, and St. Louis, St. Charles, Jefferson and Franklin counties.
Plaintiff began her employment with MoDOT as a typist on July 1, 1969. She was promoted to secretary in August, 1970, and to senior secretary one year later. Plaintiff remained a senior secretary until her termination on March 17, 1995.
Plaintiff has been under Hopkins' direct supervision since October, 1987. Although Hopkins initially selected Plaintiff to remain on his staff, their relationship has since been less than ideal. The record is replete with evidence of the combative nature of their relationship.
Plaintiff was generally regarded as a competent employee. Her most recent performance appraisal comments:
Works extremely carefully. Attention to detail is particularly strong.
...
A hard worker who doesn't like leaving work undone. Output is above level that would be considered acceptable.
Plaintiff's other performance appraisals contain similar remarks.
Over the past several years, however, these same performance appraisals also reference Plaintiff's ill-tempered nature, insubordination, and general disregard for her coworkers and supervisors. Her most recent performance appraisal reports:
She is also quick to criticize and shows little tolerance of errors made by others. She has trouble controlling her emotions and frequently raises her voice when expressing her dissatisfaction.
Likewise, her 1993 performance appraisal notes:
Continues to have problem exercising self-control when frustrated or under pressure. However, she has clearly made an effort to improve in this area and the number of incidents have decreased during the past year.
Finally, Plaintiff's 1992 performance appraisal states:
Her disposition is generally pleasant and cooperative, but she continues to have problems controlling her emotions. She can suddenly become despondent and argumentative. There have been instances in which she has become loud and abusive attracting the attention of co-workers and visitors to the district office. She has been cautioned by the district management staff and myself and is aware that future outbursts will not be tolerated. She has received an oral reprimand and is aware that any future disruptive behavior will lead to progressively severe disciplinary action.
Plaintiff contends that she frequently complained of discrimination against older women in her department. She maintains that older secretaries with seniority were passed over for promotions while younger secretaries *1004 were promoted within six months of hire. She argues that Hopkins showed a preference for younger women in 1993, when he hired a young college graduate to fill the newly created human resources specialist position.[1] She further argues that MHTC discriminatorily classified the senior secretaries, primarily women over the age of forty, at a lower grade than the younger human resources specialists. Plaintiff insists that both groups of employees shared many of the same job responsibilities. Plaintiff has also alleged many instances of personalized disparate treatment.
Defendants argue that Plaintiff was a disgruntled employee who complained incessantly, and only for her own benefit. They note the triviality of many of Plaintiff's suggested instances of disparate treatment. They further contend that there were legitimate job distinctions between the human resource specialists and senior secretaries. Finally, Defendants assert that Plaintiff was frequently disruptive and unprofessional in her manner. They insist that she would burst into Hopkins' office unannounced and demand an audience for her complaints. If Hopkins refused, Defendants claim that Plaintiff would become abusive and hostile.
On March 17, 1995, Plaintiff presented Hopkins with a coding mistake made by the human resources specialist, Melissa Hubbs. Hopkins asked Plaintiff to correct the error. Plaintiff allegedly suggested that Hubbs correct the error so that she would learn and not continue to make the same mistakes. Additionally, Plaintiff maintains that she told Hopkins that she had more pressing work and would correct the error when she had time. Although the exact nature of the ensuing confrontation is disputed, it is clear that Hopkins went to his supervisors who in turn asked Plaintiff to go home. Plaintiff was later discharged for her insubordination.
MHTC argues that it is entitled to summary judgment on Plaintiff's Title VII claims because she cannot establish a prima facie case of disparate treatment, discriminatory discharge, or retaliation, and because it has presented legitimate, nondiscriminatory reasons for all of the alleged adverse employment actions. MHTC further argues that Plaintiff's ADEA claims should be dismissed because it is entitled to Eleventh Amendment immunity.
Hopkins argues that he is entitled to summary judgment on Plaintiff's § 1983 claims because her speech was not a matter of public concern and his interest, and that of MHTC, in promoting the efficiency of public service outweighed any interest of Plaintiff. He further argues that there were legitimate, non-retaliatory reasons for all of his actions. Finally, he argues that he is entitled to qualified immunity.

Discussion
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established its right to judgment with such clarity as not to give rise to controversy. New England Mutual Life Insurance Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Electric Cooperative Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of *1005 setting forth specific facts showing that there is sufficient evidence to allow a jury to return a verdict in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir.1976).

Title VII
As an initial matter, the Court concludes that Plaintiff has exhausted her administrative remedies with respect to her claims of disparate treatment and retaliation. The affidavit filed along with Plaintiff's charge of discrimination clearly alleges facts sufficient to put the Equal Employment Opportunity Commission on notice to investigate these additional claims. See Gipson v. KAS Snacktime, Co., 83 F.3d 225, 229 (8th Cir. 1996); Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir.1994); cf. Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 222-23 (8th Cir.1994). Moreover, these claims are timely and relate back to the date on which Plaintiff filed her original Complaint. F.R.C.P. 15(c); see also Berthiaume v. Enterprise Rent-A-Car, 164 F.R.D. 121 (D.Mass.1995). Finally, the Court agrees that Plaintiff can proceed under Title VII on a theory of sex-plus-age discrimination. See Phillips v. Martin Marietta Corp., 400 U.S. 542, 543-44, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971); Knott v. Missouri Pacific Railroad Co., 527 F.2d 1249, 1250-51 (8th Cir.1975); Arnett v. Aspin, 846 F.Supp. 1234, 1237-41 (E.D.Pa.1994).
A plaintiff alleging sex-plus-age discrimination may proceed to trial in one of two ways. When a plaintiff produces direct evidence, such as statements by decisionmakers clearly showing that sex and age were motivating factors in the challenged employment decisions; or at least significant circumstantial evidence showing a specific link between the alleged discriminatory animus and the challenged employment decisions, the burden-shifting standards established by Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), apply. Stacks v. Southwestern Bell Yellow Pages, 996 F.2d 200, 201-02 (8th Cir.1993). In the absence of such evidence, it is the guidelines set forth in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), that are controlling. Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir.1997) (en banc), cert. denied, ___ U.S. ___, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997); Rothmeier v. Investment Advisers, 85 F.3d 1328, 1332 (8th Cir.1996); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 776 (8th Cir. 1995).[2]
Plaintiff argues that the Price Waterhouse standard should apply because she has presented direct evidence of discrimination. She claims that on more than one occasion Hopkins referred to three different female employees as "old women" and/or "crazy old women." Plaintiff has no evidence, however, linking these remarks to the decisional process surrounding any of the specific instances of discrimination at issue in this lawsuit. See Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1315-16 (8th Cir.1996); Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir.1993); Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir.1991). Absent such evidence, the Court concludes that these comments were merely stray remarks.
The remainder of Plaintiff's putative direct evidence consists solely of verbal re-characterizations of her circumstantial evidence, *1006 i.e., that she was allegedly subjected to more onerous working conditions than younger female employees or that Hopkins spoke to the older women in the department in a derogatory tone. Accordingly, because Plaintiff has not presented any direct evidence of sex-plus-age discrimination or significant circumstantial evidence showing a specific link between the alleged discriminatory animus and the adverse employment actions at issue, the Court will analyze her claims under the McDonnell Douglas standard.
Under McDonnell Douglas, supra, a plaintiff must first establish a prima facie case of unlawful discrimination. Roxas v. Presentation College, 90 F.3d 310, 315 (8th Cir.1996); Rothmeier, 85 F.3d at 1332; Stacks, 996 F.2d at 202. A prima facie case of sex-plus-age discrimination requires the Plaintiff to show that she was a member of the protected class (women over forty); that she was subjected to an adverse employment action; that she was qualified for a particular position or job, or was performing adequately in her job; and that the adverse employment action occurred under circumstances which would allow the court to infer unlawful discrimination. Arnett, 846 F.Supp. at 1241; see also McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510-11 (8th Cir.1995); Davenport v. Riverview Gardens School, 30 F.3d 940, 944 (8th Cir.1994).
If the plaintiff successfully establishes a prima facie case, a legal presumption of unlawful discrimination arises and the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. Ryther, 108 F.3d at 836. If the employer meets this burden of production, "the legal presumption of unlawful discrimination `drops out of the picture.'" Id., quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Still, the elements of the prima facie case remain. Ryther, 108 F.3d at 837. Moreover, when accompanied by evidence of pretext and disbelief of the defendant's proffered explanation, in some instances, they may permit a finding for the plaintiff. Id.; see also Hicks, 509 U.S. at 511. Nevertheless, "evidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of [sex-plus-age] discrimination." Ryther, 108 F.3d at 837. In other words, "[i]ntentional discrimination vel non is like any other ultimate question of fact: either the evidence is sufficient to support a finding that the fact has been proven, or it is not." Rothmeier, 85 F.3d at 1335. At all times, the plaintiff employee retains the ultimate burden of proving that she was the victim of intentional discrimination. Hicks, 509 U.S. at 507; Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); Rothmeier, 85 F.3d at 1332.
In addition to her own testimony, Plaintiff has presented affidavits from two of her former co-workers. Both of these former employees indicate that Hopkins was unresponsive and hostile to their complaints of disparate treatment of older women in the district. Moreover, both affiants dispute Defendants' evidence of Plaintiff's ill-tempered nature. Plaintiff has also produced a series of notes taken by Melissa Hubbs over a month before Plaintiff's discharge which indicate that Hopkins had spoken with his supervisor about his intent to confront Plaintiff in an effort to get her transferred or dismissed. These notes could support an inference of pretext as to MHTC's proffered reasons for its actions. Based upon this evidence and the conflicting versions of the events leading up to and on March 17, 1995, the Court concludes that the Plaintiff has created a genuine issue of material fact sufficient to preclude summary judgment on her claims of disparate treatment and discriminatory discharge. Plaintiff has also produced evidence sufficient to preclude summary judgment on her claim of retaliation arising under Title VII.[3]

ADEA
MHTC is an arm of the State of Missouri, and entitled to Eleventh Amendment immunity. See Poettker Construction Co. v. Highway & Transportation Commission of Missouri, 817 F.Supp. 75, 76 *1007 (E.D.Mo.1993) (MHTC is part of the executive branch of the government of the State of Missouri and its funds are part of the State's general treasury); see also Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1439 (8th Cir.1996) ("[c]ourts typically look at the degree of local autonomy and control and most importantly whether the funds to pay any award will be derived from the state treasury") (quoting Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985)); Sherman v. Curators of University of Missouri, 16 F.3d 860, 863 (8th Cir.1994) (same). Therefore, before it can be sued in federal court, Plaintiff must show that MHTC has waived its Eleventh Amendment immunity or that its Eleventh Amendment immunity has been abrogated by an act of Congress. Barnes v. State of Missouri, 960 F.2d 63, 64-65 (8th Cir.1992). It is undisputed, however, that MHTC has not waived its Eleventh Amendment immunity.
In determining whether Congress has abrogated state sovereign immunity, courts are to ask two questions: "first, whether Congress has unequivocally expresse[d] its intent to abrogate the immunity, and second, whether Congress has acted pursuant to a valid exercise of power." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996) (internal quotations and citations omitted).
Although courts have disagreed as to whether Congress unequivocally expressed its intent to abrogate the States' Eleventh Amendment immunity in the 1974 Amendments to the ADEA,[4]see Hurd v. Pittsburg State University, 821 F.Supp. 1410, 1413 (D.Kan.1993), aff'd, 29 F.3d 564 (10th Cir. 1994); Davidson v. Board of Governors of State Colleges & Universities, 920 F.2d 441, 443 (7th Cir.1990); compare Humenansky v. Board of Regents of the University of Minnesota, 958 F.Supp. 439, 441-42 (D.Minn. 1997), for the purposes of this analysis, the Court will assume that it did.
In Seminole Tribe, supra, the Supreme Court overruled the plurality opinion in Pennsylvania v. Union Gas Co., 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), that the Interstate Commerce Clause, U.S. Const. art. I, § 8, cl. 3, granted Congress the power to abrogate state sovereign immunity. The Court stated:
In overruling Union Gas today, we reconfirm that the background principle of state sovereign immunity embodied in the Eleventh Amendment is not so ephemeral as to dissipate when the subject of the suit is an area, like the regulation of Indian commerce, that is under the exclusive control of the Federal Government. Even when the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.
Seminole Tribe, 517 U.S. at 71-73, 116 S.Ct. at 1131-32.
As the Commerce Clause is the only source of authority for the ADEA heretofore recognized by the Supreme Court, see Gregory v. Ashcroft, 501 U.S. 452, 467-68, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) ("[t]he extension of the ADEA to employment by state and local governments was a valid exercise of Congress' powers under the Commerce Clause"); EEOC v. Wyoming, 460 U.S. 226, 243, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983) (same), MHTC argues that the 1974 Amendments could not have validly abrogated its Eleventh Amendment immunity. Accordingly, MHTC argues that this Court has no jurisdiction to consider Plaintiff's ADEA claim.
Plaintiff argues that several circuits have found that the ADEA was also passed pursuant to § 5 of the Fourteenth Amendment. See Hurd v. Pittsburg State University, 109 F.3d 1540, 1546 (10th Cir.1997) ("Congress acted pursuant to its powers under the Fourteenth Amendment when it applied the ADEA to the states"); Davidson, 920 F.2d at 443 (same). It is beyond dispute that § 5 of *1008 the Fourteenth Amendment grants Congress the power to abrogate state sovereign immunity. See Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) ("Congress may, in determining what is `appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts.").
Whether the congressional authority for the 1974 Amendments to the ADEA derived from § 5 of the Fourteenth Amendment as well as from the Commerce Clause is unclear at best. Unlike classifications based on race, the Supreme Court has held that the Equal Protection Clause of the Fourteenth Amendment permits states to make employment decisions based on age, provided the state's decision satisfies the rational-relation test applied to economic legislation. See e.g., Gregory, 501 U.S. at 470-73; Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).
Indeed, in Wyoming, supra, Chief Justice Burger, joined by Justices Powell, Rehnquist, and O'Connor, argued in dissent that the 1974 Amendments to the ADEA could not have been passed pursuant to § 5 of the Fourteenth Amendment.[5] The Chief Justice stated, "it cannot be said that in applying the Age Act to the states Congress has acted to enforce equal protection guarantees as they have been defined by this Court." Wyoming, 460 U.S. at 261 (Burger, C.J., dissenting). He further stated, "[t]here is no hint in the body of the Constitution ratified in 1789 or in the relevant amendments that every classification based on age is outlawed." Id. at 263.
More recently, in Boerne v. Flores, ___ U.S. ___, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Supreme Court found the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb et seq., to be beyond Congress' "remedial" power under § 5 of the Fourteenth Amendment. The majority explained that Congress' power under § 5 "extends only to enforcing the provisions of the Fourteenth Amendment." Id. at ___, 117 S.Ct. at 2164 (internal quotations omitted).
Although Congress has substantial discretion to determine "whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment," its discretion is not unlimited. Boerne, ___ U.S. at ___, 117 S.Ct. at 2172. "The design of the Amendment and the text of § 5 are inconsistent with the suggestion that Congress has the power to decree the substance of the Fourteenth Amendment's restrictions on the States." Id. at ___, 117 S.Ct. at 2164. As the Supreme Court noted with respect to the Free Exercise Clause of the First Amendment: "Congress does not enforce a constitutional right by changing what the right is." Id. Otherwise, "no longer would the Constitution be `superior paramount law, unchangeable by ordinary means.' It would be `on a level with ordinary legislative acts, and, like other acts, ... alterable when the legislature shall please to alter it.'" Id. at ___, 117 S.Ct. at 2168 (quoting Marbury v. Madison, 5 U.S. 137, 177, 1 Cranch 137, 177, 2 L.Ed. 60 (1803)).
The Court finds these arguments persuasive and concludes that the 1974 Amendments to the ADEA could not have been passed pursuant to § 5 of the Fourteenth Amendment.[6] Like the RFRA, the ADEA's "[s]weeping coverage ensures its intrusion at every level of government." Boerne, ___ U.S. at ___, 117 S.Ct. at 2170. Recognizing such a broad intrusion into a traditional *1009 realm of state decisionmaking is inconsistent with the Supreme Court's well-established equal protection jurisprudence. Accordingly, MHTC is entitled to Eleventh Amendment immunity on Plaintiff's ADEA claims.

§ 1983
To establish a claim of retaliation in violation of the First Amendment, Plaintiff must show that her speech addressed matters of public concern and that "[her interest], as a citizen, in commenting on matters of public concern outweighs the interest of the state, as an employer, in promoting the efficiency of the public services it performs." Tyler v. City of Mountain Home, Arkansas, 72 F.3d 568, 570 (8th Cir.1995) (citing Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)); see also Kincade v. City of Blue Springs, 64 F.3d 389, 395 (8th Cir.1995). Both questions are issues of law for the court to decide. Tyler, 72 F.3d at 570.
"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Contrary to Hopkins assertions, Plaintiff's complaints were not merely personal grievances about her job assignments and rate of pay. Instead, the record suggests that Plaintiff complained of an overall pattern of discrimination against older women in her district. Although many of these complaints arose in personal disputes, they clearly touch upon matters of public concern. See e.g., Chappel v. Montgomery County Fire Protection, 131 F.3d 564, 574 (6th Cir. 1997) ("the argument that an individual's personal motives for speaking may dispositively determine whether that individual's speech addresses a matter of public concern is plainly illogical and contrary to the broader purposes of the First Amendment"); Tao v. Freeh, 27 F.3d 635, 639-40 (D.C.Cir.1994) ("[w]hile an individual personnel dispute does not generally constitute a matter of public concern, an employee's speech aimed at resolving a personnel dispute may touch upon an issue of public concern"); see also Connick, 461 U.S. at 148 n. 8 (racial discrimination is "a matter inherently of public concern").
Likewise, the Court concludes that the Pickering balancing test must weigh in favor of Plaintiff's First Amendment rights. There is simply no argument to be made that an employee's complaints of sex and age discrimination undermine "the effective functioning of the public employer's enterprise." Rankin v. McPherson, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).
Nevertheless, Hopkins argues that he is still entitled to summary judgment on Plaintiff's § 1983 claim because Plaintiff cannot show that she suffered any adverse employment action. He explains that he was not responsible for Plaintiff's termination and that her other complaints are too de minimis to be justiciable under § 1983. Alternatively, Hopkins contends that Plaintiff cannot show that her protected speech was a motivating factor for any alleged retaliatory conduct.
In Rutan v. Republican Party, 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Supreme Court held that an employee who suffered an adverse employment action other than dismissal could maintain a First Amendment tort suit. See also Smith v. Fruin, 28 F.3d 646, 649 n. 3 (7th Cir.1994) ("even minor forms of retaliation can support a First Amendment claim, for they may have just as much of a chilling effect on speech as more drastic measures"); Tao, 27 F.3d at 639 ("[e]mployer action taken against an employee in response to her exercise of free speech need not be as significant as the denial of a promotion to raise a constitutional claim"). The Court therefore concludes that the pattern of harassment alleged in this case is sufficient to state a First Amendment claim under § 1983. Additionally, the Court concludes that Plaintiff has created a genuine issue of material fact as to whether Hopkins actions were motivated by her speech.
Finally, the Court concludes that Hopkins defense of qualified immunity must be denied. Plaintiff's rights under the First Amendment were clearly established at the time of the events giving rise to this lawsuit. See e.g., Whisman v. Rinehart, 119 F.3d 1303, 1309 (8th Cir.1997).
Accordingly,
*1010 IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by defendant Missouri Highway Transportation Commission on December 1, 1997, is GRANTED in part and DENIED in part.
IT IS FURTHER ORDERED that defendant Missouri Highway Transportation Commission is entitled to Eleventh Amendment immunity on Plaintiff's ADEA claims and that Count II of Plaintiff's Third Amended Complaint be and is DISMISSED for lack of subject matter jurisdiction.
IT IS FINALLY ORDERED that the Motion for Summary Judgment filed by defendant Ron Hopkins on December 1, 1997, is DENIED.
NOTES
[1] Plaintiff claims that Hopkins only interviewed women in their twenties for the human resources specialist position. She also claims that she was told she was not qualified for the position despite her years of experience because she did not have a college degree. Plaintiff argues that this is violative of the department policy that five years of employment is equal to a college degree.
[2] Cases interpreting the ADEA can also be useful in Title VII cases, and vice versa, because the relevant definitions are nearly identical and the underlying purpose is similar. Devine v. Stone, Leyton & Gershman, P.C., 100 F.3d 78, 80 (8th Cir.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1694, 137 L.Ed.2d 821 (1997); Lenhardt v. Basic Institute of Technology, Inc., 55 F.3d 377, 380 (8th Cir.1995). Indeed, the standards and provisions governing the proper order and nature of proof for employment discrimination cases under Title VII apply with equal force to cases arising under the ADEA. Berg v. Bruce, 112 F.3d 322, 326-27 (8th Cir.1997).
[3] Plaintiff's retaliation claim under Title VII is similarly analyzed under the McDonnell Douglas framework. Kim v. Nash Finch Co., 123 F.3d 1046, 1059-60 (8th Cir.1997).
[4] The ADEA, originally passed in 1967, did not provide a cause of action against the Federal Government or the States and their political subdivisions. In 1974, Congress amended the statute's coverage provisions to include these entities.
[5] The majority offered no opinion on the issue. Wyoming, 460 U.S. at 243 ("[w]e need not decide whether [the ADEA] could also be upheld as an exercise of Congress' powers under § 5 of the Fourteenth Amendment").
[6] In so doing, the Court respectfully disagrees with the analysis employed and results reached by the Tenth, Seventh, and First Circuits. See Hurd v. Pittsburg State University, 109 F.3d 1540, 1544-46 (10th Cir.1997); Davidson v. Board of Governors of State Colleges & Universities, 920 F.2d 441, 443 (7th Cir.1990); Ramirez v. Puerto Rico Fire Service, 715 F.2d 694, 700 (1st Cir. 1983). The Court also notes that this reasoning is consistent with the general view that the ADEA is tied to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., which was clearly passed pursuant to Congress' commerce authority. See Raper v. Iowa, 115 F.3d 623, 623-24 (8th Cir. 1997).