Lorie PLENGEMEIER,
Plaintiff/Appellant,

v.

THERMADYNE INDUSTRIES, INC.
and Joseph F. Mueller, Defendants/Respondents.

No. ED 99193.

Missouri Court of Appeals,
Eastern District,
Division One.

June 4, 2013.

Application for Transfer to Supreme Court Denied July 24, 2013.

Application for Transfer Denied Oct. 29, 2013.

John D. Lynn, Donna L. Harper, St. Louis, MO, for plaintiff/appellant.

Randall S. Thompson, Kimberley J. Mathis, Clayton, MO, for defendants/respondents.

SHERRI B. SULLIVAN, J.

*Introduction*

Lorie Plengemeier (Appellant) appeals from the trial court's judgment dismissing her petition alleging gender discrimination in her employment under the Missouri Human Rights Act (MHRA) against Thermadyne Industries, Inc. (Thermadyne) and Joseph F. Mueller (Mueller) (collectively Respondents) as time-barred by the statute of limitations. We reverse and remand.

*Factual and Procedural Background*

Appellant's first amended petition (petition) alleged the following. Thermadyne manufactures and markets metal welding

and cutting products. In 2000, Thermadyne hired Appellant as a Specialty Markets Manager. In 2004, Appellant was promoted to the position of National Accounts Manager, and this promotion made her the only woman employed in a sales or marketing position in the Americas Sales and Marketing Group. As a National Accounts Manager, Appellant reported through James Horvath (Horvath), Vice President of National Accounts, to Mueller, Vice President of the Americas Sales and Marketing Group.

Appellant's job performance as a National Accounts Manager was exemplary, as evidenced by her annual performance evaluations for 2004 through 2008. The 2004 evaluation stated Appellant "has the overall best analytical mind within my team. She is outstanding at identifying an opportunity and then taking the correct actions to close the deal or complete the project." Her 2005 performance review stated, "Overall progress from day one to 18 months has been outstanding. You are developing a very nice career that will take you far." In 2005, Thermadyne awarded Appellant a quarterly Thermadyne Sales Leadership Award. In the first quarter of 2005, Appellant finished above 100% of the quarter's quota at 114.97% of budget and was the top performer in her group. In 2006, Appellant's performance review stated, "Due to [Appellant's] efforts and account management, Airgas has deemed Thermadyne their best and most attentive supplier." Her 2007 review noted Appellant did an outstanding job with Airgas again that year; the relationships were outstanding and Appellant was still the top NAM [National Accounts Manager] for 2007. Her 2008 review recited that she "developed very good relationships with the customer, [and had] very good analytical skills."

On October 16, 2009, Thermadyne internally posted a notice that it was accepting applications for a newly created position of Director of Americas Marketing and National Accounts (Director). The two main qualifications for the Director's position were listed as (1) a bachelor's degree with an MBA preferred and (2) ten or more years of experience in sales or marketing with experience in the welding industry preferred. On October 22, 2009, Appellant applied for the Director's position and informed Mueller of her interest in the job. On October 23, 2009, Appellant completed her application by obtaining her supervisor's signature and submitting it to Lana Vakula in Human Resources, who advised Appellant that Mueller would interview her for the position the following week. On October 26, 2009, Mueller told Appellant she was not going to be considered for the Director's position and he was not going to interview her because he was hiring Tony Coco (Coco), a man from outside Thermadyne. Appellant believed she was much better qualified for the Director's position than Coco, in that she had a bachelor's degree with an emphasis in marketing and an MBA, as well as sixteen years of experience in sales and marketing with nine of them in the welding industry working for Thermadyne; while Coco had a bachelor's degree without an emphasis in marketing and no MBA, and only five years of experience in sales and marketing, none of them in the welding industry. On November 1, 2009, Appellant began reporting to Mueller through Coco.

Appellant pled that after she was not promoted, she discovered Thermadyne was and had been systematically paying her substantially less compensation over the years than a male National Accounts Manager, Eric Moore (Moore). Every year Thermadyne's Senior Management Group for the Americas Sales and Marketing division, which included Mueller, determined

the salaries of National Accounts Managers Appellant and Moore. While both had the same job description, Appellant had more education and seniority than Moore, and also greater job responsibilities, in that she handled accounts worth approximately $100 million in annual revenue with a much larger percentage of U.S. sales; while Moore handled accounts worth approximately $30 million in annual revenue with a much smaller percentage of U.S. sales. Appellant discovered that in 2006, Respondents paid Appellant $18,700 less than it did Moore; in 2007, $20,000 less; in 2008, $20,600 less; and in 2009, $20,000 less. Respondents also provided Moore with a company car, while they did not for Appellant. Appellant's yearly base salary, bonuses, 401(k) match and company car allowance were all less than Moore's.

In January 2010, after Appellant's discovery of Respondents' disparate treatment, she resigned from Thermadyne. Appellant's last day of employment at Thermadyne was January 13, 2010 and she received her last paycheck on January 22, 2010.

On April 21, 2010, within 180 days of Respondents' discriminatory acts as required by the MHRA in Section 213.075,[1] Appellant filed an administrative charge of gender discrimination with the Missouri Commission on Human Rights (MCHR).[2] After obtaining a right-to-sue letter from the MCHR on October 14, 2011, Appellant brought the instant lawsuit in circuit court on January 10, 2012, within 90 days of her receipt of the right-to-sue letter as required by the MHRA in Section 213.111.

In her petition, Appellant alleged Respondents were guilty of a continuing violation of the MHRA by discriminating against her for four years because of her gender based upon the above recounted facts.

On April 9, 2012, Respondents filed a motion to dismiss Appellant's petition on the ground that her claim of gender discrimination was barred by the MHRA's two-year statute of limitations set forth in Section 213.111. Appellant filed a response in opposition to the motion, arguing her claim was timely under the continuing violation doctrine. The trial judge entered a judgment granting Respondents' motion to dismiss without explication. This appeal follows.

### Point on Appeal

Appellant claims the trial court erred in dismissing her petition as untimely filed because it was timely under the continuing violation doctrine, in that it was filed within two years of the date of the last act of discrimination against her.

### Standard of Review

■ A motion to dismiss is the proper motion for attacking a petition on the ground it is barred by the statute of limitations, especially where the expiration of the limitation appears on the face of the petition. *Harris–Laboy v. Blessing Hosp., Inc.*, 972 S.W.2d 522, 524 (Mo.App. E.D. 1998); *Heintz v. Swimmer*, 922 S.W.2d 772, 775 (Mo.App. E.D.1996). The trial court may not dismiss the petition unless it is clearly established on the petition's face and without exception that the cause of

---

1. All statutory references are to RSMo 2006, unless otherwise indicated.

2. Appellant noted on the MCHR Charge of Discrimination form in the designated boxes that the "earliest discrimination date" was October 26, 2009, which was the day Coco received the Director's position, and the "lat-

est discrimination date" was January 13, 2010, which was Appellant's last day of employment at Thermadyne. Appellant also checked the corresponding box querying whether the discrimination was a "continuing action."

action is time-barred. *Braun v. Petty,* 31 S.W.3d 521, 523 (Mo.App. E.D.2000); *Doyle v. Crane,* 200 S.W.3d 581, 590–91 (Mo.App. W.D.2006). The determination of whether the statute of limitations applies to bar the action is a question of law that we review *de novo. Harris–Laboy,* 972 S.W.2d at 524; *Warren County Concrete, L.L.C. v. Peoples Bank & Trust Co.,* 340 S.W.3d 289, 290 (Mo.App. E.D.2011).

In ruling on a motion to dismiss, including one based on the bar of a statute of limitations, the trial court is obliged to construe the petition liberally, give the pleadings their broadest intendment, take the statements of fact in the petition as true, and determine whether the petition states facts which, if established, demonstrate a right of recovery against the defendant which the law recognizes, or of a cause that might be adopted in the case. *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 306 (Mo.banc 1993); *Johnson v. Vee Jay Cement* 77 S.W.3d 84, 88 (Mo. App. E.D.2002). We do the same on review. *Hamdan v. Board of Police Com'rs for City of St. Louis,* 37 S.W.3d 397, 399 (Mo.App. E.D.2001). When the trial court does not specify its reasons for dismissing a petition, this Court presumes the trial court acted for one of the reasons stated in the motion to dismiss. *City of Chesterfield v. DeShetler Homes, Inc.,* 938 S.W.2d 671, 674 (Mo.App. E.D.1997). For an affirmative defense to be sustained upon a bare motion to dismiss, the defense must be irrefutably established by the plaintiff's pleading. *Lehnig v. Bornhop,* 859 S.W.2d 271, 272 (Mo.App. E.D.1993).

## Discussion

Section 213.111.1 states that an action brought under the MHRA shall be filed "within ninety days from the date of the commission's notification letter to the individual but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party." See also *Reed v. McDonald's Corp.,* 363 S.W.3d 134, 140 (Mo.App. E.D.2012). In this case, Appellant filed the instant action on January 10, 2012, which was within 90 days of her October 14, 2011 receipt of the right-to-sue letter from the MCHR. Respondents maintain that although Appellant timely filed her petition within 90 days of her receipt of the right-to-sue letter, it was filed more than two years after the alleged acts of discrimination.

Appellant filed her petition on January 10, 2012. Accordingly, in order to satisfy the two-year statute of limitations, the events giving rise to Appellant's injury must have occurred after January 10, 2010, unless some exception applies. Appellant contends that her discrimination claim was timely filed under the continuing violation doctrine.

The requirements for timely filing under the MHRA are subject to the principles of waiver, estoppel and equitable tolling. *Pollock v. Wetterau Food Distribution Group,* 11 S.W.3d 754, 763 (Mo. App. E.D.1999). One such equitable exception is the continuing violation theory. *Id.* Missouri courts recognize the concept of a continuing violation in employment discrimination cases, but the plaintiff must show that the discriminatory acts were not isolated incidents. *Missouri Pacific Railroad Co. v. Missouri Commission on Human Rights,* 606 S.W.2d 496 (Mo.App. W.D.1980); *Hill v. St. Louis Univ.,* 923 F.Supp. 1199, 1205 (E.D.Mo.1996); *Hammond v. Municipal Correction Institute,* 117 S.W.3d 130, 136 (Mo.App. W.D.2003).

The continuing violation theory was created to add some flexibility to an otherwise rigid jurisdictional filing requirement that might often result in the denial

of Title VII [3] remedies to employees who have suffered employment discrimination. *Missouri Pacific Railroad Co.*, 606 S.W.2d at 501. Under the continuing violation theory, a victim of discrimination may pursue a claim for an act occurring prior to the statutory period, if she can demonstrate the act is part of an ongoing practice or pattern of discrimination by her employer. *Pollock*, 11 S.W.3d at 763.

■■ To survive a motion to dismiss, a plaintiff must plead two things to state a claim for discriminatory conduct amounting to a continuing violation. *Pollock*, 11 S.W.3d at 763. First, she must allege that at least one act occurred within the filing period. *Id.* Appellant's petition alleges January 13, 2010 as her last day of employment at Thermadyne, and she also listed January 13, 2010 as the last date of discrimination by Respondents on her April 21, 2010 MCHR Charge of Discrimination. Specifically, the pleadings in Appellant's petition allege:

41. Defendants paid Plaintiff her last paycheck on January 22, 2010, in which they paid her for her work through January 13, 2010.

42. Throughout her employment and up to and including January 13, 2010, Plaintiff's total compensation, including without limitation, her base salary, bonuses, 401(k) match, and company car allowance, was less than that of Eric Moore, her male counterpart. In total from 2006 through 2010, Defendant Thermadyne paid Moore nearly $80,000 more than it paid Plaintiff.

43. Defendants, by their actions and failures to act, including but not limited to those described above, have discriminated against Plaintiff on account of her sex on a continuing basis since at least

2006. *The discriminatory conduct, which continued through January 13, 2010, includes but is not limited to paying her less than a less qualified male colleague, failing to provide her a company car and denying her a promotion on at least one occasion.*

(Emphasis added.) Thus, Appellant has successfully pled at least one discriminatory act of said continuing violation conduct occurred within the limitations period.

■■ Next, a plaintiff must establish that the disparate treatment is comprised of a series of interrelated events, rather than isolated or sporadic acts of intentional discrimination. *Pollock*, 11 S.W.3d at 763. Under the continuing violation theory, a plaintiff may pursue a claim for an event that occurred prior to the statute of limitations for filing a claim of discrimination if the plaintiff can demonstrate that the event is "part of an ongoing practice or pattern of discrimination" by the employer. *Tisch v. DST Systems, Inc.*, 368 S.W.3d 245, 252 (Mo.App. W.D.2012), quoting *Pollock*, 11 S.W.3d at 763.

In the instant case, Appellant alleged that over the years 2006 through 2010, she was consistently paid less on a recurrent basis than her male counterpart Moore. The affirmative decision to do so, i.e., to pay Appellant substantially less than Moore, who had the same "position" as her, but was less qualified and had less responsibility, education and seniority, was made, reviewed and remade by Mueller and the Sales and Marketing Senior Management Group each year, which would amount to five times over the period alleged by Appellant, from 2006 through 2010.

---

**3.** Title VII of the Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C. § 2000e et seq., was enacted to prohibit discrimination by employers on the basis of race, color, religion, sex or national origin.

Furthermore, Appellant alleged she was also systematically given lesser benefits than Moore. In the midst of this repetitive pattern of deciding to pay and then paying Appellant less than Moore, as well as giving her lesser benefits, Appellant alleges she was also denied the opportunity to interview, compete for, or secure a promotion for which her pleadings establish she was substantially more qualified than Coco, the outside hire to whom Mueller gave the job.

■ Respondents maintain that the "continuing violation theory does not apply to a discrete act such as failure to promote." However, Appellant's petition is not limited to Respondents' decision that she should not get the Director's position but alleges that act as part of a pattern or practice of discrimination that led to her realization that she was being systematically discriminated against on a repetitive basis by her employer. Respondents contend that the "continuing violation theory is a limited, equitable exception to the MHRA's statutes of limitations which is necessitated by the unique, cumulative nature of harassment, hostile work environment, and constructive discharge claims." Nowhere do Respondents cite, nor do we find, any precedent that limits the continuing violation theory to claims of sexual harassment, hostile workplace, or constructive discharge. These kinds of discrimination may be uniquely suited for and give rise to the equitable continuing violation doctrine, but the continuing violation doctrine is not exclusive to them. Rather, the continuing violation theory is only defined as applying to conduct that is "part of an ongoing practice or pattern of discrimination" by the employer. *Tisch*, 368 S.W.3d at 252, *Pollock*, 11 S.W.3d at 763.

Appellant has pled conduct that goes beyond a few isolated incidents and alleges an ongoing practice. *Hill*, 923 F.Supp. at 1205; *Hammond*, 117 S.W.3d at 136. The discrimination asserted by Appellant is based on the cumulative effect of individual acts of disparate treatment over time. See *Tisch*, 368 S.W.3d at 254. Therefore, Appellant has pled the equitable auspices of the continuing violation doctrine.

■ Appellant does not allege in her petition that she quit her job and filed a charge of discrimination because Mueller gave the Director's position to Coco. Nor does Appellant contend that she quit and filed the charge because she discovered that Thermadyne paid her less than Moore. Rather, Appellant alleged it was her discovery that she had been systematically discriminated against over the years by Respondents based on her gender through a combination of various discriminatory practices, a "series of closely-related, similar events that occurred within the same general time period and stemmed from the same source," [4] the culmination of which led her to resign from a company she had worked for ten years and seek redress under the MHRA. A continuing violation is found where existing employment practices exhibit a pattern of employment discrimination, like alleged here. *Missouri Pacific Railroad Co.*, 606 S.W.2d at 502.

A similar situation was presented in *Roberts v. Panhandle Eastern Pipeline Co.*, 763 F.Supp. 1043 (W.D.Mo.1991), in which the plaintiff sued under the MHRA for employment discrimination based on her gender due to twice being passed over for a Senior Representative position. The defendant sought summary judgment [5]

4. A "continual violation," as defined by *Pollock*, 11 S.W.3d at 763.

5. *Roberts* is instructive even though it involved a summary judgment and on this appeal we are merely dealing with the sufficien-

based on the plaintiff's filing outside the two-year statute of limitations, i.e., filing suit on November 30, 1989 for a position she was not offered on August 20, 1987. The Court denied the request, and in distinguishing discrete acts from a continuing violation in the context of the selection/promotion process, stated:

Plaintiff does not merely allege that defendant discriminated against her in making the initial Senior Representative offers on August 20, 1987. If this were the only discriminatory act alleged by plaintiff, her civil action would be time-barred. However, plaintiff's allegations are much broader. She alleges that defendant's selection process was discriminatory and that based on that process, defendant did not initially offer her a Senior Representative position and also did not later offer her one of the vacant Senior Representative positions. Specifically, plaintiff alleges that the offer tendered to Bob Schults for the Senior Representative position in the late spring of 1988 was the result of defendant's discriminatory selection process.

Plaintiff has presented facts that show defendant's alleged discrimination was not limited to isolated events but pervaded a series of events ... The continuing violation was the continued application of defendant's allegedly discriminatory selection process. Plaintiff has shown that defendant continued to use its discriminatory selection process and continued to make discriminatory job offers until late spring of 1988 ... within two years of the November 30, 1989 filing in this case. Therefore, plaintiff's sex discrimination claim is not time-barred by § 213.111.

*Id.* at 1050. The same reasoning applies in the instant case. Appellant did not just sue Respondents for failure to get the

Director's job. Rather, Appellant alleged that every year from 2006 to 2010, Respondents systematically decided to set her salary substantially lower than Moore's and give Moore superior benefits in the form of bonuses, 401(k) match and a company car allowance. This was not an isolated incident, but occurred from 2006 through 2010, and consisted of a pattern or practice in the midst of which Appellant alleges Respondents passed her over and did not even interview or consider her for a promotion for which she was better qualified than the ultimate recipient Coco, simply because she is female. As noted in *Tisch*, "[o]n the other end of the spectrum [from discrete acts of discrimination] are 'continuing violations' that consist of 'repeated conduct' extending over a period of time." *Id.* at 254, citing *Morgan*, 536 U.S. at 115, 122 S.Ct. 2061.

Construing Appellant's petition liberally and giving her pleadings their broadest intendment, we determine her petition states facts which, if established, demonstrate a right of recovery under the continuing violation doctrine against Respondents for violation of the MHRA. *Nazeri*, 860 S.W.2d at 306. Appellant has adequately alleged acts supporting a theory of continuing violation and that at least one of the alleged discriminatory actions occurred within two years of the date Appellant filed her MCHR lawsuit. *Pollock*, 11 S.W.3d at 763. Accordingly, the trial court should not have dismissed her petition. Point granted.

*Conclusion*

The trial court's judgment is reversed and remanded with instructions to the trial court to reinstate Appellant's MHRA claim

cy of the pleadings to survive a motion to dismiss.

against Respondents in the first amended petition.

CLIFFORD H. AHRENS, P.J., and GLENN A. NORTON, J., concur.

