

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| GORDON JEFFERY, | ) | No. ED104290 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Julian Bush |
| ST. LOUIS FIRE DEPARTMENT, | ) | |
| | ) | |
| Respondent. | ) | Filed: December 27, 2016 |

### Introduction

Gordon Jeffery ("Appellant") appeals from the judgment of the circuit court of the City of St. Louis dismissing his suit of employment discrimination under the Missouri Human Rights Act ("MHRA") for failure to exhaust his administrative remedies. Appellant argues that he properly exhausted his administrative remedies because his administrative charge provided his employer, the St. Louis City Fire Department (the "Department"), with notice of the claim he later pursued in his petition. We agree Appellant exhausted his administrative remedies. We reverse the circuit court's judgment and remand for further proceedings consistent with this opinion.

# Factual Background[1]

Appellant is an African American employed with the Department.  On March 27, 2014, Appellant filed an administrative charge with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission alleging that:

I.      I am an African American . . .

II.     In 2013, [the Department] announced multiple vacancies for Battalion Chief. I applied for the position and . . . completed all the necessary testing requirements. On November 25, 2013, I was notified by [the Department] that I did not score high enough to be ranked on the eligible list.  At the time of my testing I had been with the department for over 25 years, and had been a Captain for over 16 years . . . I do not believe the test accurately measured my knowledge, skills, and abilities.

III.    Given that the majority of those who scored high enough to be ranked on the eligible list were Caucasian individuals, I believe the test had a disparate impact on African American Individuals.

IV.     Based on the above stated reasons, I believe I was discriminated against because of my race, African American, in violation of Title VII of the Civil Rights Act of 1964, as amended.

On May 26, 2015, Appellant received a right to sue letter from the MCHR.  Appellant filed suit against the Department on August 24, 2015.  In his petition, Appellant alleged, *inter alia*, that:

30.     [The Department] has engaged in unlawful discriminatory acts that are prohibited under the [Missouri Human Rights Act].
. . . .

33.     [The Department] treated [Appellant] inequitably based upon his race and provided unfavorable workplace terms, conditions, and privileges of employment as compared to other similarly situated employees who are not African American.

---

[1] We deny the Department's motion "to strike [Appellant's] Statement of Facts for lack of compliance with the requirements of Rule 84.04(c)." Although the Department's complaint is marginally valid, "the issues presented are important . . . so we decline to dismiss the appeal." *State v. Miller*, 815 S.W.2d 28, 31 (Mo. App. E.D. 1991); *Bean v. Bean*, 115 S.W.3d 388, 392 (Mo. App. S.D. 2003).

34. [Appellant] was denied a promotion . . . on the basis of his race despite his superior experience and aptitude compared to similarly situated Caucasian employees who received the promotion.

35. [Appellant] was denied the opportunity to review the answer key on for [sic] his examination.

36. [The Department] discriminatorily, maliciously, and fraudulently failed to properly grade [Appellant's] Battalion Chief Examination on the basis of [Appellant's] race so that he would have a subpar score.

. . . .

41. [The Department] knew or should have known of the discrimination and failed to take prompt and effective remedial action to end the discrimination.

42. As a direct and proximate result of the foregoing, [Appellant] suffered intentional discrimination . . . at the hands of [the Department].

43. [Appellant's] race was a contributing factor in [the Department's] actions and decisions to treat [Appellant] differently and less favorably than other similarly situated employees.

. . . .

46. [The Department's] conduct was outrageous because of [The Department's] evil motive or reckless indifference to the rights of [Appellant] . . .

The Department filed a motion to dismiss in January 2016. The motion court granted the motion in March 2016. In its order and judgment, the court found that Appellant failed to exhaust his administrative remedies before filing his suit because his administrative charge did not notify the Department of his claim that the Department's employees intentionally discriminated against Appellant. This appeal follows.

**Discussion**

In his sole point on appeal, Appellant argues that the circuit court improperly concluded that he failed to exhaust his administrative remedies. Appellant asserts that his administrative charge placed the Department on notice of the claim he later pursued in his petition. The Department contends that Appellant failed to exhaust his administrative remedies because he

3

alleged a distinct theory of intentional discrimination in his petition that was not contained in his administrative charge.

**Relevant Law**

We review the grant of a motion to dismiss *de novo*. *Ambers–Phillips v. SSM DePaul Health Ctr.*, 459 S.W.3d 901, 905 (Mo. banc 2015). When reviewing the petition, "we accept the allegations in the petition as true and grant the plaintiff all reasonable inferences from those allegations." *Gerke v. City of Kansas City*, 493 S.W.3d 433, 436 (Mo. App. W.D. 2016). We do not weigh the factual allegations' credibility or persuasiveness, and instead we review the petition to determine whether "the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Id.* Moreover, we will affirm the trial court's dismissal "if it can be sustained on any ground supported by the motion to dismiss." *Beck v. Flemming,* 165 S.W.3d 156, 158 (Mo. banc 2005).

Appellant brought his claim of discrimination pursuant to the Missouri Human Rights Act (MHRA). In deciding cases under the MHRA, courts are guided by both Missouri law and "applicable federal employment discrimination decisions." *Smith v. Aquila, Inc.,* 229 S.W.3d 106, 113 (Mo. App. W.D. 2007). However, Missouri's discrimination safeguards under the MHRA can offer greater protection than federal standards, and "[i]f the wording in the MHRA is clear and unambiguous, then federal caselaw which is contrary to the plain meaning of the MHRA is not binding." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 819 (Mo. banc 2007).

The MHRA requires that a claimant must exhaust his administrative remedies prior to petitioning the courts for relief. *Reed v. McDonald's Corp.*, 363 S.W.3d 134, 143 (Mo. App. E.D. 2012). In order to exhaust his administrative remedies, he must give notice of his claims by

4

including them in his administrative complaint. *Id*. Administrative complaints are "interpreted liberally in an effort to further the remedial purposes of the legislation that prohibits unlawful employment practices. *Id.* (quoting *Alhalabi v. Missouri Department of Natural Resources,* 300 S.W.3d 518, 525 (Mo. App. E.D. 2009)). Therefore, "administrative remedies will be exhausted as to all incidents that are like or reasonably related to the allegations" contained in the administrative charge. *Id.* When determining whether the claims in a subsequent civil suit are "like or reasonably related" to the allegations contained in the administrative charge, courts have held that the scope of the subsequent civil suit may be as broad as the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination. *Alhalabi,* 300 S.W.3d at 525.

### Analysis

Appellant cites to *Alhalabi* in support of his argument that he exhausted his administrative remedies because his administrative charge provided notice of the claim of discrimination he later asserted in his petition. In *Alhalabi,* the claimant filed a charge of discrimination with the MCHR, which issued a notice of his right to sue. *Alhalabi,* 300 S.W.3d at 524. The claimant then filed a petition that included discrimination claims as well as a hostile work environment claim. *Id.* At trial, the jury found in the claimant's favor on his hostile work environment claim, but not his discrimination claims. *Id.* The respondent appealed, arguing that the claimant failed to exhaust his administrative remedies as required under the MHRA, because the claimant had not raised the hostile work environment claim in his administrative charge. *Id.*

On appeal, this Court held that although the claimant had not explicitly used the phrase "hostile work environment" in his administrative charge, his allegations sufficiently set forth a hostile work environment claim because he alleged pervasive, racially discretionary conduct. *Id.*

5

at 526. We further held that, even assuming that the claimant's charge did not set forth a claim for hostile work environment, it was likely that the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination would include whether the claimant was employed in a hostile work environment. *Id.*

The Department seeks to distinguish *Alhalabi* by arguing that Appellant, unlike the claimant in *Alhalabi,* alleged new acts of discrimination in his petition that constituted a new theory of discrimination. The Department argues that Appellant alleged a "disparate impact" claim of discrimination in his administrative complaint, but alleged acts of "intentional disparate-treatment" in his petition. For example, Appellant alleged in his petition, but not in his administrative charge, that "[the Department] discriminatorily, maliciously, and fraudulently failed to properly grade [Appellant's] Battalion Chief Examination on the basis of [Appellant's] race so that he would have a subpar score" and "[the Department's] conduct was outrageous because of [the Department's] evil motive or reckless indifference to the rights of [Appellant] . . . ."

Missouri and federal courts have recognized the distinction between the theories of "disparate impact" and "disparate treatment" in the employment discrimination context. *See Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 124 (Mo. banc 2015); *Brown v. Ameriprise Fin. Services, Inc.*, 707 F. Supp. 2d 971, 976 (D. Minn. 2010). A disparate treatment claim involves intentional discrimination against an individual (or group of individuals) by an employer due to the individual's membership in a protected group, while a disparate impact claim typically involves unintentional discrimination against a protected group due to an employment practice or policy. *Vitug v. Multistate Tax Comm'n,* 88 F.3d 506, 513 (7th Cir.1996). Therefore, federal courts have noted that exhaustion of one type of claim typically

6

does not exhaust the other. *See, e.g., Diersen v. Walker,* 117 Fed.Appx. 463, 466 (7th Cir.2004). There are, though, cases where federal courts have held that the exhaustion of one type of claim did, under the facts of the particular case, exhaust the other. *See Gomes v. Avco Corp.,* 964 F.2d 1330, 1335 (2d Cir. 1992); *DiPompo v. West Point Military Acad.,* 708 F.Supp. 540, 547-548 (S.D.N.Y. 1989); *Watkins v. City of Chicago,* 992 F.Supp. 971 (N.D.Ill. 1998).

We agree with the Department that Appellant's petition alleged a claim of disparate treatment as opposed to disparate impact. However, keeping in mind that we must liberally construe the allegations contained in Appellant's administrative charge in an effort to further the remedial purposes of the MHRA, we conclude that the incidents of discrimination alleged in Appellant's petition are reasonably related to the allegations contained in his administrative charge. *See Alhalabi,* 300 S.W.3d at 525.

Although Appellant alleged in his administrative charge that the Department's test for promotion had a "disparate impact" on African Americans given that the majority of those who passed the test were white, he also alleged he was subjected to disparate treatment by the Department. In his charge, Appellant alleged that: 1) he met or exceeded his employer's legitimate performance expectations; 2) he had over 25 years' experience with the Department, including twelve years' experience as an Acting Battalion chief; 3) the Department informed him he did not score high enough on a test for promotion despite his experience; 4) he believed the test did not accurately measure his own knowledge, skills, and abilities; and 5) he believed he was discriminated against because he was African American.

Similar to *Alhalabi,* Appellant failed to use the explicit phrase "disparate treatment" in his administrative charge. However, his administrative allegations, when taken together, set forth a claim that the Department intentionally discriminated against Appellant individually

because of his membership in a protected class. Accordingly, Appellant adequately alleged a claim of disparate treatment in his administrative charge. *See Vitug v. Multistate Tax Commn.,* 88 F.3d 506, 513 (7th Cir. 1996) ("Disparate treatment . . . occurs when a plaintiff is intentionally treated less favorably than others simply because of his race, color, religion, sex, or national origin").

However, regardless of whether Appellant's charge of discrimination alleged a disparate treatment claim, the critical question we must answer in this case is whether the claims set forth in Appellant's petition were within the scope of the administrative investigation which "could reasonably be expected to grow" out of his administrative charge. *Alhalabi,* 300 S.W.3d at 525; *Ramseur v. Perez,* 962 F. Supp. 2d 21, 27 (D.D.C. 2013). The Department argues that an investigation into Appellant's allegations in his administrative charge would focus on "demographic and statistical data" regarding the candidates who took the exam and "it would focus on the validity of the exam." The Department asserts "[t]he investigation would not be concerned with evidence, direct or circumstantial, regarding the motive of [the Department] in administering the exam."

We disagree with the Department. An investigation into Appellant's administrative charge of discrimination could reasonably include an inquiry into how the tests for promotion were graded. This investigation could also reasonably be expected to include whether Appellant's test was graded in a discriminatory manner, intentionally or otherwise. Therefore, the allegations in Appellant's petition were within the scope of the administrative investigation which could reasonably be expected to grow out of his administrative charge. Accordingly, Appellant exhausted his available administrative remedies prior to filing his petition in the circuit court. *See Ramseur,* 962 F.Supp.2d at 27. Appellant's Point I is granted.

**Conclusion**

We reverse the circuit court's judgment and remand for further proceedings consistent

with this opinion.

_____
Philip M. Hess, Chief Judge

Lawrence E. Mooney, J. and
Robert G. Dowd, Jr., J. concur.

9