

# In the Missouri Court of Appeals
# Eastern District

**DIVISION FIVE**

| | | |
|---|---|---|
| AMANDA GILL, | ) | No. ED109658 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| v. | ) | Cause No. 1911-CC00458 |
| | ) | |
| CITY OF ST. PETERS, | ) | Honorable Daniel G. Pelikan |
| | ) | |
| Respondent. | ) | Filed: March 1, 2022 |

## Introduction

Amanda Gill ("Gill") appeals the circuit court's judgment dismissing Count II of her petition alleging sex discrimination by her employer under the Missouri Human Rights Act ("MHRA"). We affirm.

## Facts and Procedural Background

Viewed in the light most favorable to the plaintiff and taken as true, *McGuire v. Edwards*, 571 S.W.3d 661, 665 (Mo. App. E.D. 2019), the facts in the petition are as follows. Amanda Gill began working for the City of St. Peters ("City") as a dispatcher in the municipal police department in 2009. Gill married her husband, an employee in the City's parks department, in 2012. Gill and her husband often worked overlapping shifts without issue between 2012 and August 2015. The City announced in January 2015 that the parks department would merge with the municipal police department.

1

Gill and her husband were told separately by their supervisors that they would not be affected by the City's nepotism policy. Then, in August 2015, the City's human resources manager informed Gill she would need to change departments before the merger on October 1, 2015. The human resources manager told Gill and her husband they had to move and would not be "grandfathered in." Gill and her husband responded that another married couple worked as a police dispatcher and a police officer in apparent violation of the nepotism policy, to no avail.

Gill was transferred to the City's water department in December 2015. She was transferred with the same base pay she received as a police dispatcher, despite that her new position at the water department paid less. At the water department, Gill received no raises or overtime pay equivalent to those she would have received as a police dispatcher.

More than two years after the transfer, on October 1, 2018, Gill filed a charge of discrimination with the Missouri Commission on Human Rights ("Commission").[1] On the charge, Gill checked a box indicating the conduct was a "Continuing Action," identified the date the discrimination took place as "Dec. 15 to Present," and alleged two claims of sex discrimination by the City. Gill denominated her second claim "Sex Discrimination – Disparate Impact" and recounted the facts set forth above. On April 4, 2019, the Commission issued Gill a notice of the right to sue the City within ninety days.

Gill filed a petition in the Circuit Court of St. Charles County on May 2, 2019. In Count II of the petition, Gill again denominated her claim "Sex Discrimination – Disparate Impact." Gill attached the charge of discrimination as an exhibit to the petition.

The City filed a motion to dismiss Count II for failure to state a claim on the bases that: Gill's claim was time-barred; the MHRA does not provide for, nor do Missouri courts recognize, a claim of disparate impact; and even if a disparate impact claim could be construed under the

[1] Gill's petition states that the charge of discrimination was filed on September 28, 2018. However, the charge attached to the petition bears October 1, 2018 as the filing date, and Gill and the City agree in their appellate briefs that the charge was filed on October 1, 2018.

2

MHRA, Gill did not sufficiently allege the elements of that claim. After substantial briefing and a hearing on the motion, the circuit court dismissed Count II because Gill's petition was time-barred pursuant to the statutory filing periods in Sections 213.075.1 and 213.111.1 of the MHRA.[2] The circuit court also held that Missouri courts have not recognized a disparate impact claim under the MHRA.

Later, the circuit court granted the City's motion for summary judgment on Count I of the petition, which alleged a sexually hostile work environment. The circuit court entered judgment on both Counts I and II on April 22, 2021.

Gill initially filed a notice of appeal challenging the circuit court's summary judgment on Count I and dismissal of Count II. Then Gill filed a memorandum dismissing her appeal as to Count I. Thus, this appeal concerns only the circuit court's dismissal of Count II.

**Standard of Review**

We review the circuit court's granting of a motion to dismiss *de novo*. *Vinson v. Mo. Comm'n on Human Rights*, 622 S.W.3d 218, 221 (Mo. App. E.D. 2021). We will affirm the judgment of dismissal if it can be sustained on any ground raised in the motion to dismiss. *Id.*

A motion to dismiss for failure to state a claim under Rule 55.27(a)(6) is solely a test of the adequacy of the plaintiff's petition.[3] *State ex rel. Halsey v. Phillips*, 576 S.W.3d 177, 180 (Mo. banc 2019). We take the facts alleged in the petition as true and in the light most favorable to the plaintiff. *McGuire*, 571 S.W.3d at 665. We review the petition to determine if the facts alleged meet the elements of a recognized cause of action or of one that might be adopted in that case. *Id.* When an affirmative defense, such as a statute of limitations, is asserted, the petition may be dismissed on that basis only if it "clearly establishes on its face and without exception that it is barred." *State ex rel. Halsey*, 576 S.W.3d at 180.

---

[2] All Section references are to the Revised Statutes of Missouri (2000), unless otherwise indicated.
[3] All Rule references are to Missouri Supreme Court Rules (2019), unless otherwise indicated.

**Discussion**

On appeal, Gill argues, first, that her disparate impact claim was not time-barred because the MHRA's filing periods were tolled or otherwise extended. Second, Gill argues that Missouri recognizes a disparate impact claim under the MHRA. We address these separate legal grounds *seriatim*.

<u>Whether Gill's Claim Was Time-Barred</u>

The MHRA, in Section 213.055.1, prohibits an employer from discriminating against an employee on the basis of sex in certain circumstances. Section 213.075.1 requires any complaint filed with the Commission to be filed "within one hundred eighty days of the alleged act of discrimination." Similarly, Section 213.111.1 requires an action brought in court to be filed "no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party."

Gill appears to concede that she did not file her complaint with the Commission or her action in court within the original filing periods in Sections 213.075.1 and 213.111.1. Gill pled that she was transferred to the water department sometime in December 2015, and did not elaborate on the date. Gill does not contest that Section 213.075.1, on its face, required Gill to file her charge of discrimination before the end of June 2016, within 180 days of December 2015. Instead, Gill filed the charge on October 1, 2018, more than two years out of time. Likewise, Section 213.111.1 required Gill to file her petition in the circuit court, at the latest, in December 2017, no later than two years after Gill was transferred to the water department in December 2015. Instead, Gill filed her petition in May 2019, more than 17 months out of time.

*The Filing Periods Were Not Tolled under the Continuing Violation Theory.*

Gill nonetheless urges that the filing periods in Sections 213.075.1 and 213.111.1 did not run on her claim because she pled a continuing violation, which equitably tolled the filing periods. Gill relies on caselaw subjecting the MHRA's filing periods to principles of waiver and estoppel,

4

and equitable tolling exceptions, including the continuing violation theory. *See Plengemeier v. Thermadyne Indus.*, 409 S.W.3d 395, 400 (Mo. App. E.D. 2013); *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 252 (Mo. App. W.D. 2012).

But the legislature has since broadly amended the MHRA, including Section 213.075.1, effective August 28, 2017.[4] *See* S.B. 43, 99th Gen. Assemb., 1st Reg. Sess. (Mo. 2017). Those amendments render the 180-day filing period in Section 213.075.1 "a jurisdictional condition precedent to filing a civil action under [the MHRA]." Further, the legislature added:

> Notwithstanding any other provision of this chapter to the contrary, if a complaint is not filed with the commission within one hundred eighty days of the alleged act of discrimination, the commission shall lack jurisdiction to take any action on such a complaint other than to dismiss the complaint for lack of jurisdiction. The failure to timely file a complaint with the commission may be raised as a complete defense by a respondent or defendant at any time, either during the administrative proceedings before the commission, or in subsequent litigation . . ..

*Id.*

The legislature spoke clearly and repeatedly in jurisdictional terms. "As a creature of statute, an administrative agency's authority is limited to that given it by the legislature." *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 588 (Mo. banc 2013); *State ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 598 (Mo. banc 2012).

Both parties extensively cite Section 213.075.1, and the City heavily quotes the 2017 amendments, but neither party addresses whether the amended version of Section 213.075.1 applies here. *See SD Invs., Inc., v. Michael-Paul, LLC*, 157 S.W.3d 782, 785 (Mo. App. W.D. 2005) ("Subject matter jurisdiction cannot be waived . . .. Consequently, the question of subject matter jurisdiction can be raised at any time by the parties, or by this Court *sua sponte*.").

With few exceptions, statutory amendments are presumed to operate prospectively, and we generally apply the version of the MHRA in effect at the time of the alleged discriminatory act. *See Wiedner v. Ferrellgas, Inc.*, 607 S.W.3d 231, 237 (Mo. App. W.D. 2020); *McGaughy v.*

---

[4] The legislature also amended Section 213.111.1, but those amendments are not relevant to this appeal.

*Laclede Gas Co.*, 604 S.W.3d 730, 743 (Mo. App. E.D. 2020). Here, Section 213.075.1 was amended in 2017, after Gill's 2015 termination, but before Gill filed her 2018 charge of discrimination and her 2019 petition, which arguably alleged a continuing violation. *Compare Wiedner*, 607 S.W.3d at 237 (applying pre-amendment version of MHRA's definition of "employer" where alleged discrimination occurred in 2016 and plaintiff filed petition in 2018) *with State ex rel. D&D Distribs., LLC v. Mo. Comm'n on Human Rights*, 579 S.W.3d 318, 324-25 (Mo. App. W.D. 2019) (concluding 2017 amendment requiring Commission to make jurisdictional finding did not apply where "[a]ll of the relevant events," including plaintiff's termination and filing of charge of discrimination and petition, occurred before amendment's effective date). Whether the 2017 amendments apply here to end our analysis, or whether Gill's unusually dated (and unlikely to be repeated) claim remains susceptible to equitable tolling analysis under the pre-amendment statute, the result is the same.

Even if the pre-amendment version of Section 213.075.1, subject to equitable tolling analysis and the continuing violation theory, applies here, Gill's claim was untimely. When applicable, such equitable doctrines "are to be applied sparingly" in determining whether a discrimination claim was timely filed. *Tisch*, 368 S.W.3d at 252 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

Under the continuing violation theory, a plaintiff may pursue a claim for an act that occurred outside the filing period if he can demonstrate the act is part of an ongoing pattern or practice of discrimination by the employer. *Plengemeier*, 409 S.W.3d at 401. On appeal, Gill points out that she attached her charge of discrimination as an exhibit to her petition. On the charge, Gill checked the "Continuing Action" box and identified the date the discrimination took place as "Dec. 2015 to Present." This was insufficient to plead a continuing violation.

Rule 55.05 requires a short and plain statement of the facts showing that the pleader is entitled to relief. Gill is correct insofar as attaching the charge of discrimination as an exhibit to

6

the petition rendered it a part of the petition pursuant to Rule 55.12. However, checking the "Continuing Action" box and identifying the date of the discrimination as "Dec. 2015 to Present" are not a short and plain statement of facts showing that Gill is entitled to relief for an ongoing pattern or practice of discrimination. They are conclusory allegations of fact and legal conclusions, which are not considered in deciding whether a petition states a claim upon which relief can be granted. *See A.F. v. Hazelwood Sch. Dist.*, 491 S.W.3d 628, 632 (Mo. App. E.D. 2016); *Hendricks v. Curators of Univ. of Mo.*, 308 S.W.3d 740, 747 (Mo. App. W.D. 2010).

Further, to prevail on a continuing violation theory, Gill would have to show, first, that at least one act occurred within the filing periods and, second, that the claim of discrimination is part of a "series of interrelated events, rather than isolated or sporadic acts of intentional discrimination." *Tisch*, 368 S.W.3d at 252; *Plengemeier*, 409 S.W.3d at 401. Gill implies on appeal that her ongoing paychecks, without anticipated raises or overtime pay, occurred within the filing periods, and those paychecks and the December 2015 transfer are a series of interrelated events amounting to a continuing violation. She is incorrect.

A continuing violation consists of "'repeated conduct' extending over a period of time." *Plengemeier*, 409 S.W.3d at 403 (quoting *Tisch*, 368 S.W.3d at 254). An example is a hostile work environment, which involves repeated conduct by its very nature.[5] *Tisch*, 368 S.W.3d at 254. On the other end of the spectrum, an isolated act of intentional discrimination or a discrete act is one that occurs at a particular moment in time. *Id.* at 253. Examples of discrete acts are "termination, failure to promote, denial of transfer, or refusal to hire." *Id.*

Gill's petition pled the discrete act of her transfer to the water department, not a continuing violation. The resulting diminished pay is not a continuing violation, but merely the continuing impact of a discrete act. Missouri courts long have distinguished timely continuing violations from

---

[5] We note the circuit court granted summary judgment on Gill's Count I alleging a hostile work environment, and Gill dismissed her appeal as to that count.

untimely continuing impacts. *See Mo. Pac. R.R. v. Mo. Comm'n on Human Rights*, 606 S.W.2d 496, 501 (Mo. App. W.D. 1980) (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977)). More specifically, a one-time employment action affecting a continuing loss of pay is not a continuing violation and is untimely if not brought within the statutory period. *See State ex rel. St. Louis Cty. v. Mo. Comm'n on Human Rights*, 693 S.W.2d 173, 175 (Mo. App. W.D. 1985). Ultimately, "continuance of the impact resulting from an act of discrimination does not prolong the life of the claim." *Id.* (citing *Mo. Pac. R.R.*, 606 S.W.2d at 502-03).

Gill's petition pled neither a discriminatory act within the filing periods, nor a series of interrelated events that would bring an earlier discriminatory act within the filing periods. As a result, she cannot avail herself of the continuing violation theory and her claim was time-barred.

*The Filing Periods Were Not Extended by the Lilly Ledbetter Fair Pay Act of 2009.*

As a separate legal basis for extending or restarting the filing periods in the MHRA, Gill invokes the federal Lilly Ledbetter Fair Pay Act of 2009, which amended Title VII of the Civil Rights Act of 1964 and was codified in 42 U.S.C. §2000e-5(e). Gill directs us to language in the Ledbetter Act providing: "[A]n unlawful employment practice occurs . . . when an individual becomes subject to a discriminatory compensation decision or other practice . . . including each time wages, benefits or other compensation is paid, resulting in whole or in part from such a decision or other practice." 42 U.S.C. §2000e-5(e)(3)(A).

As the name suggests, the Ledbetter Act was Congress's response to the U.S. Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007). *See Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 720 (8th Cir. 2012) (recognizing Congress passed Ledbetter Act to overrule *Ledbetter* decision). In the *Ledbetter* case, plaintiff Lilly Ledbetter's employer denied her pay raises for discriminatory reasons apparently unknown to her at the time. To render her Title VII claims timely, Ledbetter argued that each resulting paycheck was an unlawful

employment practice that restarted the limitations period. The Court rejected Ledbetter's argument and held that her claims were untimely. *Ledbetter*, 550 U.S. at 624, 628-29, 632, 637.

Initially, we observe that Gill's claim is readily distinguishable. She pled she was fully aware of the City's nepotism policy and its bearing on her when she was transferred in December 2015. Despite that, she would have us apply the Ledbetter Act to restart the MHRA filing periods with each of her paychecks in perpetuity. As we recently said in an analogous context, "[t]his, of course, would directly contradict the fundamental purpose of statutes of limitation: 'to prevent the assertion of stale claims.'" *Bacon v. Friedman*, 621 S.W.3d 170, 178 (Mo. App. E.D. 2021) (citation omitted)); s*ee also Nat'l R.R. Passenger Corp.*, 536 U.S. at 108 ("In the context of a request to alter the timely filing requirements of Title VII, this Court has stated that 'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

Setting aside that distinction, the Ledbetter Act is mentioned nowhere in Gill's petition. We are reminded of our standard of review: A motion to dismiss for failure to state a claim is solely a test of the adequacy of the plaintiff's petition. *State ex rel. Halsey*, 576 S.W.3d at 180. We may consider only the allegations in the petition when addressing affirmative defenses, such as a statute of limitations, raised in a motion to dismiss. *Murray-Kaplan v. NEC Ins.*, 617 S.W.3d 485, 491 (Mo. App. E.D. 2021) (citing *City of Lake St. Louis v. City of O'Fallon*, 324 S.W.3d 756, 759 (Mo. banc 2010)).

Still, Gill maintains that the Ledbetter Act may be persuasive authority in interpreting the MHRA on appeal. To be sure, the Supreme Court of Missouri recently reiterated, "In deciding a case under the MHRA, appellate courts are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law." *Lin v. Ellis*, 594 S.W.3d 238, 242 (Mo. banc 2020). That said, the MHRA is not merely a reiteration of Title VII, and in some ways

9

is broader and in other ways more restrictive. *Brady v. Curators of Univ. of Mo.*, 213 S.W.3d 101, 113 (Mo. App. E.D. 2006). When federal caselaw is inconsistent with the plain meaning of the MHRA, it is inapposite for the purpose of interpreting the MHRA. *See Keeney v. Hereford Concrete Prods.*, 911 S.W.2d 622, 624 (Mo. banc 1995); *Mignone v. Mo. Dep't of Corr.*, 546 S.W.3d 23, 35-36 (Mo. App. W.D. 2018).

Contrary to the language of the Ledbetter Act cited by Gill, the clear and unambiguous language of the MHRA sets out consequential filing periods, which, as Missouri caselaw makes clear, are unaffected by the recurring payment of wages, benefits, or other compensation without more. It should go without saying that reference to the language of a federal statute with no analogue in the MHRA does not aid us in interpreting the MHRA, much less provide a separate rationale for extending its filing periods in perpetuity. S*ee Keeney*, 911 S.W.2d at 624 (rejecting argument that MHRA retaliation provision must be read consistently with Title VII retaliation provision, because "the difference in the language employed by the two statutes is sufficiently stark to render judicial interpretations of the federal law inapposite for the purpose of assigning meaning to [the MHRA]").

Gill's Count II clearly established on its face and without exception that it was time-barred, and the circuit court correctly dismissed Count II for that reason.

Whether Missouri Courts Have Recognized a Disparate Impact Claim under the MHRA

The circuit court dismissed Count II on the independent basis that Missouri courts have not recognized a disparate impact claim under the MHRA. Gill concedes in her brief that "[n]either party could point to a Missouri case which explicitly set forth the elements of a sex discrimination – disparate impact claim," and the "issue appears to be one of first impression as to the elements of the claim." Gill insists, however, that Missouri courts have recognized a disparate impact claim and refers us to *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107 (Mo. banc 2015), and *Jeffery v. St. Louis Fire Dep't*, 506 S.W.3d 394 (Mo. App. E.D. 2016). She nevertheless

10

acknowledges that "[a]part from those two (2) cases suggesting the claim exists, there is no guidance in Missouri on the elements of the claim, the manner of proving the claim, nor any MAI approved jury instruction." Neither of the cases cited by Gill, nor any other Missouri law we can find, recognizes a disparate impact claim under the MHRA.

In *Cox*, the plaintiff alleged that his termination was a single act of discrimination resulting from his employer's company-wide policy of terminating older employees in favor of younger replacements. 473 S.W.3d at 112, 123, 126, 127. Certainly, the *Cox* plaintiff did not plead a disparate impact claim as generally understood: a facially neutral employment practice that has a significant adverse impact on members of a protected class.[6] *See, e.g.*, *Williams v. Wells Fargo Bank*, 901 F.3d 1036, 1040 (8th Cir. 2018) (identifying elements of *prima facie* federal disparate impact claim as "(1) an identifiable, facially-neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two"). The *Cox* court confirmed as much in concluding that whether evidence of other employees' terminations was admissible under "a disparate impact or pattern-or-practice theory" was not dispositive of whether it was admissible in *Cox*, "as those are not the claims Mr. Cox is pursuing." *Cox*, 473 S.W.3d at 124. The court seemed to refer to "disparate impact" and "pattern-or-practice" interchangeably as examples of a federal cause of action in which evidence of other employees' terminations would face a higher standard of admissibility than in *Cox*. *See id.* at 116-17, 124. Indeed, the court disclaimed, "[T]his Court has not even addressed whether Missouri law permits pattern-or-practice claims." *Id.* at 117. Thus, not only did *Cox* not recognize a disparate impact claim under Missouri law, *Cox* was not even a disparate impact case.

In *Jeffery*, the plaintiff labeled his claim before the Commission a disparate impact claim, rather than a disparate treatment claim, but pled only disparate treatment in his circuit court

---

[6] In her opening brief, Gill similarly defines disparate impact as existing "where a specified employment practice, although neutral on its face, has a disproportionally negative effect on members on [sic] legally protected class."

petition. 506 S.W.3d at 396. Given this discrepancy, the issue before this Court was whether the plaintiff exhausted his administrative remedies before filing his petition. *Id.* at 397. We acknowledged simply that Missouri and federal courts have recognized the distinction between disparate impact and disparate treatment theories, and cited *Cox* and federal caselaw. *Id.* at 399. This Court concluded that, although the plaintiff's charge of discrimination did not explicitly use the phrase "disparate treatment," it otherwise adequately alleged disparate treatment, and therefore the plaintiff exhausted his administrative remedies. *Id. Jeffery* was not a disparate impact case; the result turned on whether the plaintiff sufficiently alleged disparate treatment. Although the *Jeffery* court distinguished disparate impact and disparate treatment and cited *Cox*, neither *Cox* nor *Jeffery* recognized a disparate impact claim under the MHRA.[7]

Finally, even if Missouri courts recognized a disparate impact claim, the City accurately raised in its motion to dismiss that Gill failed to plead facts to support that claim. For example, Gill did not plead that the City's nepotism policy adversely impacted women as members of a protected class, and instead pled only that the policy negatively impacted her individually. *See Hill v. St. Louis Univ.*, 923 F. Supp. 1199, 1206-07 (E.D. Mo. 1996) (concluding plaintiff did not satisfy elements of disparate impact claim because, *inter alia*, she alleged that adverse employment action affected only her individually, rather than women as protected class). In her reply brief, Gill confirms that "her claim was based upon a nepotism policy which was enforced only against her, and where others were in open violation of it. She is a statistic of one." Wherever a disparate impact claim may be recognized, this is not a disparate impact claim.

---

[7] Gill also invokes a regulation to argue that the Commission prohibits disparate impact discrimination, even if Missouri courts have not recognized such a claim. *See* 8 CSR 60-3.040(10). The regulation states, in relevant part, "Any distinction between married and unmarried persons of one sex that is not made between married and unmarried persons of the opposite sex will be considered to be a distinction made on the basis of sex." *Id.* That the regulation contemplates an overt distinction between persons of one sex and not the opposite sex, as opposed to a facially neutral policy, suggests the regulation is not aimed at disparate impact.

For all of these reasons, the facts alleged in Count II of the petition failed to meet the elements of a recognized cause of action, we decline to recognize such a cause of action here, and Count II failed to state a claim upon which relief can be granted.

**Conclusion**

The judgment of the circuit court is affirmed.

Cristian M. Stevens, J.

Sherri B. Sullivan, C.J., and
Colleen Dolan, J. concur.

13